**GRAND PRIX HARRISBURG, LLC, Appellant,**

v.

**DAUPHIN COUNTY BOARD OF ASSESSMENT APPEALS, Dauphin County, Central Dauphin School District and Swatara Twp.**

Commonwealth Court of Pennsylvania.

Argued June 4, 2012.

Decided Aug. 22, 2012.

Francis J. Hoegen, Wilkes–Barre, for appellant.

Jeffrey B. Engle, Millersburg, for appellees.

BEFORE: LEAVITT, Judge, and BROBSON, Judge and McCULLOUGH, Judge.

OPINION BY Judge LEAVITT.

Grand Prix Harrisburg, LLC (Taxpayer) appeals an order of the Court of Common Pleas of Dauphin County (trial court) denying its challenge to its 2009 real estate assessment of $7,958,700 as excessive. Instead, the trial court established a higher assessment for Taxpayer in the amount of $9,270,750. In reaching this conclusion, the trial court relied on the expert testimony of the taxing authorities and rejected the expert testimony of Taxpayer. However, the trial court's stated reasons for making this choice do not explain its credibility determination. Accordingly, we vacate and remand for further findings.

Taxpayer owns a four-acre parcel of land located in an industrial park in Swatara Township, Dauphin County. The parcel contains a "Residence Inn by Marriott" hotel, which was built in 1989 to offer extended-stay lodging to business travelers. The hotel has 12 separate buildings and a total of 122 guest rooms.

In tax year 2009, Dauphin County assessed Taxpayer's property at $7,958,700, which was calculated on the basis of a fair market value of $11,288,900. Reproduced Record at 375a (R.R. ——). Taxpayer challenged the assessment as excessive, but the Dauphin County Board of Assessment Appeals (Board) denied its appeal. Taxpayer then appealed to the trial court arguing, *inter alia*, that the Board's valuation of the property's fair market value was too high. The fair market value is "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Buhl Foundation v. Board of Property Assessment, Appeals and Review of Allegheny County*, 407 Pa. 567, 570, 180 A.2d 900, 902 (1962).

■ The trial court conducted a *de novo* hearing, at which Taxpayer, the Board, Dauphin County, Central Dauphin School District, and Swatara Township (collectively, the Taxing Authorities) participated. The parties stipulated that the Taxing Authorities made out a *prima facie* case for the validity of the assessment by submission of the tax card.[1] Taxpayer then submitted evidence, consisting principally of expert testimony, and the Taxing Authorities responded with the rebuttal evidence of their own expert.

Taxpayer's expert, Frederick Lesavoy, MAI, SRA, prepared an appraisal report of the property's fair market value as of September 1, 2009, which was submitted into evidence. He also testified. Lesavoy explained that a hotel is "a very unique type of real estate" because its market value is based both on the real estate and on the value of the ongoing business operating on the real estate. R.R. 42a; Notes of Testimony, July 8, 2011, at 13–14 (N.T. ——). The non-real estate elements must be separately valued because they are not subject to real estate taxes. The two non-real estate elements are: (1) the hotel's furniture, fixtures and equipment (Furniture) and (2) the intangible business enterprise value (Business Value) of the activity conducted on the real property. Lesavoy described the Business Value as "the benefit that the buyers of a hotel get by purchasing a piece of real estate that has an ongoing business, an operation that's going on inside of it." R.R. 42a; N.T. 15.

■ Fair market value, "while not easily ascertained, is fixed by the opinions of competent witnesses as to what the property is worth on the market at a fair sale." *Buhl Foundation*, 407 Pa. at 570, 180 A.2d at 902. A fair market sale of a hotel would include both Furniture and Business Value. However, because these items are not subject to real property taxes, they must be separately valued and backed out of the fair sale price to establish the fair market value for real estate

1. Once the taxing authority makes out its *prima facie* case, the burden shifts to the taxpayer to respond with credible, relevant evidence to persuade the court of the merits of his position. *Herzog v. McKean County Board of Assessment Appeals*, 14 A.3d 193, 200 (Pa. Cmwlth.2011). The taxing authority then has the right to rebut the taxpayer's evidence with its own evidence. *Green v. Schuylkill County Board of Assessment Appeals*, 565 Pa. 185, 195, 772 A.2d 419, 426 (2001) (quoting *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 221, 209 A.2d 397, 402 (1965)).

tax purposes. The experts agreed on these essential principles.

To establish fair market value, Lesavoy used both the sales comparison approach and the income approach. For the sales comparison approach, Lesavoy selected three recent sales of hotels that were comparable to Taxpayer's hotel. Based on those sales, Lesavoy testified that Taxpayer's hotel would sell for a total price of $11,165,000. Lesavoy valued the Furniture at $700,000. In his experience dealing with hotel buyers, the Business Value usually accounts for 10 to 20 percent of the purchase price; accordingly, Lesavoy selected an average Business Value of 15 percent. By deducting the Furniture and Business Value, Lesavoy gave a fair market value to Taxpayer's hotel real estate of $8,790,000, under the sales comparison approach.

In the income approach, the appraiser establishes an annual net operating income and then applies a selected capitalization rate to arrive at a fair market value for the real estate. Because the purpose of the real estate appraisal is to tax the property, not the business conducted thereon, Lesavoy testified that the actual reported income and expenses of a particular hotel is irrelevant. Lesavoy explained that real estate values are not a function of a particular proprietor's business acumen. Accordingly, the goal must be to appraise a *typical* hotel operation. To do that, Lesavoy averaged the performance of all similar types of hotels competing with each other, *i.e.*, market performance rather than individual performance. His sources of income of Taxpayer's competitors were a PKF Consulting Report and Smith Travel Research's STAR Report. The reports list the gross revenue and expense estimates for hotels in Taxpayer's market. From this average income, Lesavoy deducted franchising and management fees

as expenses. By this methodology, Lesavoy arrived at a net operating income of $1,536,051 for Taxpayer's hotel.

Lesavoy then selected a capitalization rate to apply to the annual net income of $1,536,051, to arrive at the amount a reasonable investor would pay for Taxpayer's hotel, *i.e.*, the "fair market value." Lesavoy conferred with investors, examined actual sales data and used investor surveys that established industry standard capitalization rates. Lesavoy selected a capitalization rate of 12 percent. Lesavoy then multiplied his 15 percent Business Value by the 12 percent capitalization rate, which yielded 1.8 percent. Lesavoy added 1.8 percent to 12 percent to arrive at a capitalization rate of 13.8 percent. Lesavoy then removed real estate taxes by multiplying the common level ratio by the millage rate. This produced a total capitalization rate of 15.4 percent. Notably, the higher the capitalization rate, the lower the fair market value. Application of the capitalization rate produced a figure, rounded, of $9,975,000. By deducting $700,000 for Furniture, Lesavoy established a total real estate value of $9,275,000 under the income approach.

Lesavoy then compared his $8,790,000 fair market value using the sales comparison approach with the $9,275,000 fair market value using the income approach. By combining the two approaches, he settled on a fair market value of $9,000,000 for Taxpayer's hotel. The assessment was then calculated by applying the common level ratio to the fair market value.

Lesavoy criticized the report of the Taxing Authorities' expert appraiser, Patrick Noone. With regard to the sales comparison approach, Lesavoy observed that when Noone used the purchase prices for his selected comparable sales, he did not deduct for Furniture and Business Value. Lesavoy personally contacted the various

buyers or sellers and learned that Noone used the gross purchase price in at least three instances. Lesavoy estimated that if Noone had subtracted the Furniture and Business Value, as he should have, Noone's fair market value under the sales comparison approach would have been $9,700,000 or $9,800,000 and not the $12,322,000 Noone used in his expert report.

Lesavoy also criticized Noone's income approach analysis. Lesavoy noted that both he and Noone came up with very close net operating incomes, but they differed in their chosen capitalization rates. Lesavoy opined that Noone's beginning capitalization rate was too aggressive given the current market. More importantly, Lesavoy testified that Noone had failed to account for Business Value in selecting his capitalization rate.

The Taxing Authorities responded with the expert report and testimony of Noone, MAI, who appraised Taxpayer's property in 2009. Noone testified that he considered both the income approach and sales comparison approach to do his appraisal. However, he explained that he favors the income approach as more reliable. This is because prospective buyers rely on the real property's income in deciding whether to make a purchase. Noone disagreed with Lesavoy's use of industry averages, stating that the operating history of a particular hotel is critical because every property is unique. To do his income analysis, Noone looked at the income and expenses of Taxpayer's hotel from 2007 through 2010, noting that Taxpayer's hotel outperformed its competitors in terms of occupancy. Noone calculated a net operating income of $1,629,636 *per annum*. In doing this calculation, Noone testified that he subtracted management and franchise fees, or expenses, from the gross income;

this is how he accounted for the Business Value.

Noone calculated a capitalization rate of 9.7 percent based on current financing and returns on equity available in the market. Noone then removed real estate taxes, as did Lesavoy, to arrive at a capitalization rate of 11.34 percent. By applying that capitalization rate to his net income number of $1,629,636, he arrived at a fair market value of $14,370,686. Noone then removed Furniture from this total, which produced a fair market value, rounded, of $13,150,000.

Noone criticized Lesavoy's methodology of looking at industry averages to establish the hotel's net income; he considered it preferable to consider the actual income of the individual property being appraised. Nevertheless, Noone acknowledged that his net operating income total was almost identical to Lesavoy's. Their real difference was in the capitalization rates each chose. Noone testified that because he accounted for Business Value when calculating the net operating income, he did not account for it in calculating the capitalization rate. Lesavoy, on the other hand, accounted for Business Value in calculating both net income and a capitalization rate. This is why Lesavoy's capitalization rate was higher than Noone's. However, Noone did not explain why it was error for Lesavoy to use his Business Value of 15 percent in setting his capitalization rate as well as his annual income number.

Noone testified about his sales comparison approach, which resulted in a fair market value of $12,322,000. Noone testified that he believed that the sales figures he used represented real estate only; however, he acknowledged that it was possible that some of those sales figures included Furniture and Business Value. Noone agreed that these numbers should have been deducted and that it would have been

error had he not done so. He also conceded that at least one of his sales numbers, and perhaps others, did not include these deductions. However, he dismissed such errors as irrelevant because he based his appraisal on the income approach analysis. Noone testified that he used the sales comparison approach to test the reasonableness of his income approach value and felt that his sales comparison value supported his income approach value.

■ The trial court held that the fair market value of Taxpayer's hotel was $13,150,000, as set by Noone under his income approach analysis. The trial court explained that it credited Noone's testimony that a buyer would rely on the income approach appraisal, not comparable sales, in making a purchase. The trial court assigned Noone's opinion greater weight for the stated reason that he performed a "specific and concentrated analysis" of the property rather than use industry averages. Trial Court Memorandum Opinion at 6. Thus, the trial court used Noone's fair market value to establish the assessment for Taxpayer's hotel. Taxpayer appealed to this Court, and the trial court issued a PA. R.A.P. 1925(a) opinion that is essentially identical to its memorandum opinion, noting that its order should be affirmed on the basis of its credibility determinations. The matter is now before us for our consideration.[2]

On appeal, Taxpayer argues that the trial court erred. It contends that the trial court's stated reasons for crediting Noone's testimony over that of Lesavoy do not stand up to close scrutiny. Specifical-

ly, the trial court's stated reasons were either irrelevant or contradicted by Noone himself or precedential case law. Taxpayer seeks a remand.

■ In an assessment appeal, the trial court hears the matter *de novo* and, accordingly, is the ultimate finder of fact. *Parkview Court Associates v. Delaware County Board of Assessment Appeals*, 959 A.2d 515, 520 (Pa.Cmwlth.2008). The trial court has the discretion to decide, based on the testimony of competent witnesses, which valuation method to use to value a particular property. *Id.* The trial court has exclusive province over all matters of credibility and evidentiary weight. *RAS Development Corp. v. Fayette County Board of Assessment Appeals*, 704 A.2d 1130, 1137 (Pa.Cmwlth.1997). The trial court's findings will not be disturbed if they are supported by substantial evidence in the record. *Herzog v. McKean County Board of Assessment Appeals*, 14 A.3d 193, 200 (Pa.Cmwlth.2011).

■ Nevertheless, "the trial court must state the basis and reasons for its decision." *Green v. Schuylkill County Board of Assessment Appeals*, 565 Pa. 185, 208, 772 A.2d 419, 433 (2001) (quoting *Westinghouse Electric Corp. v. Board of Property Assessment of Allegheny County*, 539 Pa. 453, 464, 652 A.2d 1306, 1312 (1995)). If an appraiser uses an improper factor when fixing the fair market value of real estate, his opinion is not substantial evidence that can support a finding of value. *Buhl Foundation*, 407 Pa. at 571, 180 A.2d at 902.[3]

---

**2.** Our review in tax assessment matters is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Herzog v. McKean County Board of Assessment Appeals*, 14 A.3d 193, 199 n. 15 (Pa.Cmwlth.2011).

**3.** In *Buhl Foundation*, the Court held that the appraiser's opinion of fair market value could not stand because he used the reproduction cost, an improper factor. *Buhl Foundation's* holding that reproduction cost is an improper factor was subsequently superseded by statute as explained in *Appeal of Kriebel*, 79 Pa. Cmwlth. 466, 470 A.2d 649, 651 n. 3 (1984).

Taxpayer acknowledges that the trial court is the ultimate fact finder and arbiter of credibility. However, it argues that the trial court's stated reasons do not support its credibility determinations. Specifically, the trial court rejected Lesavoy's entire income approach because he used industry averages, instead of actual income and expenses to establish the property's annual income. This conclusion, however, is irrelevant because both experts established virtually identical income numbers under their respective methodologies. It was their capitalization rates that differed so greatly. Taxpayer argues that Noone's income approach was faulty not because of his chosen income but because his capitalization rate was too aggressive and did not account for Business Value, which both experts agreed was an item separate and apart from a real estate value.

Further, Taxpayer argues that Noone's sales comparison approach was not reliable because Noone admitted that in at least one case, and possibly others, he did not deduct Business Value and Furniture from the gross sales price. In spite of that admitted deficiency, Noone testified that his sales approach value supported his income approach result. Taxpayer argues that if Noone's sales approach value does not support his income approach analysis, then it cannot be accepted.

Finally, by contrast, Taxpayer argues that Lesavoy's appraisal approach analysis was not flawed. What is more, without Noone's flawed, and unacceptable, testimony, Lesavoy's opinion is unrebutted and the trial court erred in discrediting it.

The Taxing Authorities respond that this Court may not reweigh the evidence and is bound by the trial court's credibility determinations. Because the court credited Noone's opinion, it is substantial evidence that supports the trial court's finding that the fair market value of the property is $13,150,000.

The trial court addressed the difference between Noone's fair market value of $13,150,000 and Lesavoy's fair market value of $9,000,000. It accepted $13,150,000 because it found Noone credible. It made this credibility determination for the stated reason that Noone focused on Taxpayer's actual income in contrast to Lesavoy's focus on industry averages. However, as noted by Taxpayer, this explanation addresses only one step in the two-step income approach methodology. Further, it was the step on which there was little disagreement; the experts used nearly identical net incomes in their respective income approach analysis.

The critical difference between the two experts was the capitalization rate that each chose for his income approach analysis. Noone started with a lower capitalization rate, which Lesavoy believed was too aggressive in the current market. When selecting a capitalization rate, Lesavoy again accounted for Business Value, but Noone did not. The trial court did not make any findings about the different capitalization rates or whether or why Business Value should not be considered in devising a capitalization rate.

Further, the trial court ignored the differences in the experts' sales approach values for the stated reason that Noone testified that real buyers would rely on the income approach. However, Noone also testified that his sales approach value supported his income approach value. First, Noone's sales comparison value was $12,322,000 and his income approach value was $13,150,000; there is a considerable difference between the two. Second, Noone admitted that the $12,322,000 value was too high because he had neglected to deduct Business Value and Furniture in at least one comparable sale, and may have

failed to make those deductions from other sales. In light of the admitted flaws in Noone's sales comparison approach, it was incumbent upon the trial court to discuss the flaws and explain whether Noone's sales comparison approach value was reasonable, as claimed by Noone, and whether it "supported" his income approach value of $13,150,000. The trial court's decision is devoid of explanation on this critical finding of fact.

 Although it is the trial court's prerogative to deem one expert more credible than the other, the trial court must explain its decision. Here, the trial court failed to consider, and resolve, the differences in the two capitalization rates and the fact that Noone's sales comparison approach was flawed, by his own admission. The only reason cited by the trial court for relying on Noone was that he used income figures for this particular property, not averages, to establish the property's annual income. Ultimately, this is a distinction without a difference because Lesavoy and Noone arrived at very close net operating income figures, using industry averages or property-specific information.

Accordingly, we vacate the trial court's order setting the fair market value for Taxpayer's property and remand for new findings and credibility determinations with a complete explanation.[4] Should the trial court determine that it needs more evidence, it may hold a new hearing.[5]

Judge SIMPSON did not participate in the decision in this case.

4. The trial court is not required to credit one expert completely over the other. If the trial court deems both experts equally credible, it may determine that the fair market value lies

## ORDER

AND NOW, this 22nd day of August, 2012, the order of the Court of Common Pleas of Dauphin County dated September 28, 2011, setting the fair market value of Grand Prix Harrisburg, LLC's property at $13,150,000 is hereby VACATED and REMANDED for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

**V.W., Petitioner**

v.

between the values presented by each party. *Green,* 565 Pa. at 208, 772 A.2d at 433.

5. *Green,* 565 Pa. at 206 n. 10, 772 A.2d at 432 n. 10.