IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ARMCO Adv. Materials Corp., : 
                 Appellant : 
     :
         v. :
     :
The Board of Assessment Appeals :
of Butler County, Butler County, :
Butler Area School District, and : No. 546 C.D. 2016
The City of Butler : Argued: November 14, 2016


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE JOSEPH M. COSGROVE, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE COSGROVE               FILED: July 11, 2017


        ARMCO Advanced Materials Corp. (Taxpayer), appeals from the March 9, 2016 order of the Butler County Court of Common Pleas (trial court) assessing Taxpayer's tax obligations as $2,122,680 for the 2015-2016 School District Tax Year and $1,973,720 for the 2016-2017 School District Tax Year. Upon review, we affirm.

        Taxpayer owns real estate at 1 Armco Drive, Butler, Pennsylvania 16045 (Property), a 1256.927 acre parcel of land improved with 2,837,720 square feet of building area which comprise the AK Steel Butler Works steel plant in Butler County. For tax year 2015, Butler County assessed the Property in the

amount of $2,915,733. The common level ratio (CLR)[1] for Butler County in 2015 was 11.4% and was 10.6% for 2016. Applying the applicable CLRs to the assessed value yielded a 2015 implied market value (the assessed value divided by the CLR) of $25,576,605 ($2,915,733 ÷ 11.4%) and a 2016 implied market value of $27,506,915 ($2,915,733 ÷ 10.6%). (Trial Court Opinion (T.C.O.), 3/9/16, at 2-4.)

Taxpayer timely appealed the assessment with the Board of Property Assessment (Board). Following a hearing, the Board sustained the assessment of the Property at a total value of $2,915,733. Taxpayer then appealed the Board's decision to the trial court, which referred the matter to a Board of Arbitrators (Arbitrators). Following a hearing, the Arbitrators found the market value of the property to be $18,600,000, thus reducing the tax assessment to $2,120,400 for 2015. Taxpayer timely appealed the Arbitrators' decision to the trial court. *Id.* at 2.

The trial court held a tax assessment hearing/non-jury trial, at which Taxpayer presented the testimony of its appraiser, Paul D. Griffith, MAI, CRE, FRICS (Mr. Griffith), regarding the fair market value of the Property. Mr. Griffith opined the fair market value to be $8,400,000. *Id.* Mr. Griffith did not view the highest and best use of the Property as an industrial plant, and so evaluated the Property as though it were a dead, or non-functioning, facility. (Reproduced

---

[1] A "common level ratio" is "[t]he ratio of assessed value to current market value used generally in the county and published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year on appeal before the board [of assessment appeals] under the act of June 27, 1947 (P.L. 1046 ...), referred to as the State Tax Equalization Board Law." Section 8802 of the Consolidated County Assessment Law, *as amended*, 53 Pa.C.S. § 8802. The provisions of the State Tax Equalization Board Law, *formerly* 72 P.S. §§ 4656.1–4656.17, were repealed and replaced by the Act of April 18, 2013, P.L. 4, effective immediately. The new provisions are now found in 71 P.S. §§ 1709.1500–1709.1521.

Record (R.R.) at 156.) He therefore used only dead properties as comparables. *Id.* at 93-94. Additionally, to arrive at his assessment, Mr. Griffith used the floor area ratio (FAR) analysis method, which is based on the usable area of land relative to that which is developed. At one point, Mr. Griffith went so far as to opine that 650 acres of the Property had a value of zero dollars to any buyer. *Id.* at 129.

Butler Area School District, County of Butler, and Butler Township (Appellees) presented the testimony of appraiser David J. King, MAI, SRA (Mr. King). Mr. King offered his opinion that the subject parcel had a fair market value of $18,620,000. (T.C.O. at 3.) Mr. King opined that the highest and best use for the Property, as improved, was for continued use as a steel mill. (R.R. at 166.) He stated that no functioning industrial plants have been sold in the recent past, because only plants that were not able to produce steel and make a profit have sold. *Id.* at 169. Mr. King testified that he was familiar with the facility as he had appraised it three different times and lived near it for 40 years, seeing it continue to operate even though numerous other plants had closed. *Id.* at 170. Mr. King therefore used functioning industrial plants as comparables. One such comparable was a bankruptcy sale. Mr. King testified that if this bankruptcy sale included real estate and personal property, and he "had the specifics on it," then his assessment of the Property would change. *Id.* at 193-196. However, the only dollar figure in the document from the bankruptcy sale was the total amount for the sale which Mr. King used as a comparable. *Id.* at 203. Therefore, the trial court stated "I'll admit [the document] and give it whatever weight I deem necessary." *Id.*

The trial court rejected Mr. Griffith's opinion for the following reasons:

3

A. That Paul D. Griffith offered the opinion, or testified previously, that 600 acres of the approximate 1,256 acre parcel has no value;

B. That the comparables that Paul D. Griffith utilized are not similar in nature to the subject parcel; and,

C. That Paul D. Griffith failed to properly adjust values between the subject parcel and his comparables through the use of the "Floor Area Ratio" (FAR) Analysis.

(T.C.O. at 3.)

The trial court accepted Mr. King's opinion for the following reasons:

A. That David J. King offered opinions that are reasonable;

B. That David J. King's comparables are of a similar kind and quality to the subject parcel; and,

C. That David J. King made appropriate adjustments for the size of the subject parcel.

*Id.*

On appeal,[2] Taxpayer raises two issues.[3] First, Taxpayer asserts the trial court erred as a matter of law in adopting Mr. King's appraisal of the fair market value of the Property and corresponding tax assessment. Second, Taxpayer alleges the trial court abused its discretion in entirely disregarding the appraisal and expert testimony of Mr. Griffith.

[2] In a matter such as this, the trial court has exclusive province over all matters of credibility and evidentiary weight. *RAS Development Corp. v. Fayette County Board of Assessment Appeals*, 704 A.2d 1130, 1137 (Pa. Cmwlth. 1997). The trial court's findings will not be disturbed if they are supported by substantial evidence in the record. *Herzog v. McKean County Board of Assessment Appeals*, 14 A.3d 193, 200 (Pa. Cmwlth. 2011). If the issues are questions of law, the standard of review is de novo and our scope of review is plenary. *Clifton v. Allegheny County*, 969 A.2d 1197, 1209, n.17 (Pa. 2009).

[3] Taxpayer raises three issues, which we condense for clarity and ease of disposition.

4

In order to accurately assess taxes for a particular property, a trial court must determine the fair market value of the property as of the date the appeal was filed before the Board. 53 Pa.C.S. § 8854. Fair market value is "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Buhl Foundation v. Board of Property Assessment, Appeals and Review of Allegheny County*, 180 A.2d 900, 902 (Pa. 1962). Fair market value, "while not easily ascertained, is fixed by the opinions of competent witnesses as to what the property is worth on the market at a fair sale." *Buhl Foundation*, 180 A.2d at 902; *Grand Prix Harrisburg, LLC v. Dauphin Cty. Bd. of Assessment Appeals*, 51 A.3d 275, 277 (Pa. Cmwlth. 2012).

The trial court has the discretion to decide, based on the testimony of competent witnesses, which valuation method, such as highest and best use, to use to value a particular property. *Grand Prix Harrisburg*, 51 A.3d 275, 280. In Pennsylvania, a property's current use and its resulting value-in-use cannot typically be considered in assessing the fair market value of property for tax assessment purposes. *F&M Schaeffer Brewing Company v. Lehigh County Bd. of Assessment Appeals*, 610 A.2d 1 (Pa. 1992). However, regarding a property's current use, this Court has stated that "continued use for the same or similar purpose as the present use certainly may be considered where that is the most reasonably probable use in view of marketplace demand, but continued use may not be considered otherwise." *Mack Trucks, Inc. v. Lehigh County Board of Assessment Appeals*, 692 A.2d 661, 663 (Pa. Cmwlth. 1997).

Taxpayer first argues the trial court erred as a matter of law in adopting Mr. King's appraisal. Taxpayer asserts that, in determining the fair

5

market value of the Property, Mr. King inappropriately considered its current use as its highest and best use despite a lack of any supporting evidence, such as a market analysis of the demand for large steel mills or comparable sales of other steel mills, as well as the Property's value-in-use. (Taxpayer's Brief at 12-16, 18-19, 20-22.) Further, Taxpayer claims the bankruptcy sale Mr. King used in his analysis included personal property in the sale price and, as such, Mr. King unlawfully considered the value of personal property in determining the fair market value of the Property. *Id.* at 21-22. Taxpayer therefore concludes Mr. King both overvalued the Property and used an improper factor in determining the fair market value of the Property.

Although Taxpayer only alleges the trial court erred as a matter of law, Taxpayer is also challenging the trial court's findings of fact and credibility determinations. Specifically, by alleging Mr. King did not have supporting evidence for his valuation, inappropriately considered the Property's current use, and considered the Property's value-in-use in determining the fair market value of the Property, Taxpayer challenges the trial court's findings of fact and its reliance on Mr. King's testimony as credible.

In an assessment appeal, the trial court hears the matter de novo and is therefore the ultimate finder of fact. *Grand Prix Harrisburg,* 51 A.3d at 280. "As fact-finder, the trial court maintains exclusive province over matters involving the credibility of witnesses and the weight afforded to the evidence." *Parkview Court Associates v. Delaware Cty. Bd. of Assessment Appeals*, 959 A.2d 515, 521 (Cmwlth. 2008) (quoting *In re Penn–Delco Sch. Dist.,* 903 A.2d 600, 608 (Pa. Cmwlth. 2006)). "All the components that the expert considered are matters which the fact finder considers in determining the persuasive quality of the testimony.

6

The fact finder weighs the opinions of the experts against one another to determine credibility and weight." *Appeal of Avco Corp.*, 515 A.2d 335, 338 (Pa. Cmwlth. 1986). However, "[i]f an appraiser uses an improper factor when fixing the fair market value of real estate, his opinion is not substantial evidence that can support a finding of value." *Grand Prix Harrisburg*, 51 A.3d at 280 (citing *Buhl Foundation*, 180 A.2d at 902). If the trial court's findings are supported by substantial evidence, this Court will not disturb them. *Grand Prix Harrisburg,* 51 A.3d at 280.

Instantly, the trial court adopted Mr. King's appraisal, finding his "comparables are of a similar kind and quality to the subject parcel" and he "offered opinions that are reasonable." (T.C.O. at 3.) Included in Mr. King's testimony was his opinion of why the highest and best use for the Property, as improved, was for continued use as a steel mill. (R.R. at 136.) He explained that no functioning industrial plants have been sold in the recent past, because only plants that were not able to produce steel and make a profit have sold. *Id.* at 139. Mr. King testified that he had appraised the Property three different times and it had continued to operate as a functioning steel mill although numerous other plants had closed. *Id.* at 140. Mr. King therefore based his highest and best use analysis on a functioning facility and used other functioning industrial facilities, although none were steel mills, as comparables. *Id.* at 140, 142. As the record substantially supports the trial court's findings, we will not disturb them.

Further, the trial court found Mr. King did not use value-in-use and that he credibly explained as such. *Id.* at 141-143. Specifically, Mr. King testified:

> I have not valued the use of that facility. Value [in] use is a completely separate concept and approach as opposed to market value where we deal only with real estate. There's no business

7

analysis. There's no profitability presented saying Armco made X amount of money. That was never considered. What was considered is the fact that it is a functional facility that has proven that it can provide a platform for a company to generate a profit.

*Id.* at 143.

Regarding the bankruptcy sale which Taxpayer alleges included personal property, Mr. King did testify that if the bankruptcy sale included real estate and personal property and he "had the specifics on it," then his opinion would change. *Id.* at 163-166. However, when the document from the bankruptcy proceedings was introduced into evidence, it was noted that the only dollar amount in the document was the figure for the sale of the Property, which Mr. King had used for a comparable, leaving nothing to indicate the inclusion of personal property in the sale. *Id.* at 173. As noted above, the trial court judge stated "I'll admit it and give it whatever weight I deem necessary." *Id.* Clearly, the trial court did not give Taxpayer's argument much weight and did not find it persuasive. As delineated, the record supports the trial court's determination, and we do not find discretion was abused.

Accordingly, Mr. King did not use the Property's current use as its highest and best use without substantial supporting evidence. Additionally, as the record makes clear, Mr. King did not use the Property's value-in-use in his analysis. Trial court therefore did not err in adopting Mr. King's appraisal of the Property.

Taxpayer next alleges the trial court abused its discretion by entirely disregarding the appraisal and expert testimony of Mr. Griffith. Specifically, Taxpayer argues Mr. Griffith did not testify that 650 acres of the approximate 1,256 acre parcel had no value as the trial court found, but, rather, that "this is an

8

over-simplification and mischaracterization of Mr. Griffith's testimony that is not supported by the record as a whole." (Taxpayer's Brief at 25.) Taxpayer attempts to explain Mr. Griffith's testimony regarding the value of the 650 acres as merely a result of a difference in valuation approaches between Mr. King and Mr. Griffith, and alleges the value of the 650 acres are captured in the overall value for the usable property. *Id.* at 25-26, 30. Taxpayer argues that the trial court did not hold Mr. Griffith's testimony to be not credible and "merely chose Mr. King's value over Mr. Griffith's." *Id.* at 30. Further, contrary to the trial court's findings, Taxpayer asserts Mr. King's appraisal lacks credibility. *Id.* Essentially, Taxpayer is arguing the trial court should have accepted Taxpayer's interpretation of Mr. Griffith's testimony over that testimony presented by Mr. King.

As stated, "the trial court maintains exclusive province over matters involving the credibility of witnesses and the weight afforded to the evidence." *Parkview Court Associates*, 959 A.2d at 521. Mr. Griffith explicitly testified "that buyer is effectively giving that value of those 650 acres of [sic] zero dollars. They're not paying any money for that. There's no economic return to be had for that." (R.R. at 99.) When asked "Well, and to put a finer point on it, it's your opinion, isn't it, that that 650 acres, whatever it is, of unusable property, in your opinion, has no value," Mr. Griffith responded "That's what I just said." *Id.* Accordingly, the trial court rejected Mr. Griffith's opinion, in part, because it found "[t]hat Paul D. Griffith offered the opinion, or testified previously, that 600 [sic] of the approximate 1,256 acre parcel has no value." (T.C.O. at 3.) It was well within the sound discretion of the trial court to take Mr. Griffith's words at face value. As such, despite Taxpayer's attempted explanation of this testimony, the record supports the trial court's reasoned rejection of Mr. Griffith's testimony. We

9

therefore decline to substitute our own findings of fact and credibility determinations for those soundly arrived at by the trial court.

As Taxpayer is not entitled to relief on its issues, we affirm the March 9, 2016 order of the trial court.

_____
JOSEPH M. COSGROVE, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ARMCO Adv. Materials Corp.,     :
              Appellant     :
    :
         v.     :
    :
The Board of Assessment Appeals     :
of Butler County, Butler County,     :
Butler Area School District, and     :    No. 546 C.D. 2016
The City of Butler     :

# O R D E R

AND NOW, this 11ᵗʰ day of July, 2017, the order of the Butler County Court of Common Pleas dated March 9, 2016 is AFFIRMED.

_____
JOSEPH M. COSGROVE, Judge