IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Prospect Crozer LLC : 
from the Decision of the Board of :
Assessment Appeals of Delaware :
County, PA : Nos. 1727-1728 C.D. 2019
: Argued: March 10, 2022
Appeal of: Prospect Crozer LLC :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT FILED: September 28, 2022


Prospect Crozer LLC (Taxpayer) appeals two orders of the Court of Common Pleas of Delaware County (trial court) that, collectively, assessed Taxpayer's real property at $14.1 million for tax years 2017 and 2018.[1] On appeal, Taxpayer argues that the two orders are null and void because the judge issued them after he had forfeited his judicial office by assuming a position with the Philadelphia Board of Revision of Taxes (Philadelphia Tax Board). Taxpayer also challenges the orders on their merits because the trial court failed to set an assessment for the 2019 tax year and erred, *inter alia*, in accepting a valuation methodology not approved by the appraisal profession. For the reasons that follow, we vacate the trial court's orders and remand the matter.

---

[1] On May 12, 2020, the Court granted Taxpayer's application to consolidate the appeals at Nos. 1727 C.D. 2019 and 1728 C.D. 2019.

## Background

Taxpayer owns two adjacent properties in Springfield Township, Delaware County, Pennsylvania. The first is a 25-bed hospital, known as Springfield Hospital, and the second is a parking garage with 855 parking spaces. Both properties are part of an 11-acre land condominium with four units: Springfield Hospital, the parking garage, the Springfield Medical Office Building, and the Healthplex Building. The four-unit land condominium was formerly known as the Springfield Healthplex, which Taxpayer acquired as part of its acquisition of the Crozer-Keystone Health System on July 1, 2016.

For tax years 2017 and 2018, the Delaware County Assessment Office assessed Springfield Hospital at $13,810,935 and the parking garage at $1,366,409. Taxpayer challenged the tax assessments as excessive in an appeal to the Delaware County Board of Assessment Appeals, which denied its appeal. Taxpayer then appealed to the trial court, and Springfield School District and Springfield Township (collectively, Taxing Authorities) intervened.

At the *de novo* hearing before the trial court, the parties stipulated that with the admission of the assessments of the Delaware County Assessment Office, Taxing Authorities established a *prima facie* case.[2] Taxpayer then submitted expert testimony and documentary evidence to challenge the Delaware County

---

[2] In tax assessment appeal proceedings, the taxing authority places its assessment records into evidence. *Songer v. Cameron County Board of Assessment Appeal*, 173 A.3d 1253, 1256 (Pa. Cmwlth. 2017). The burden shifts to the taxpayer to present "sufficient competent, credible and relevant evidence" of the property's fair market value to overcome the taxing authority's assessment records. *Id.* at 1257. If the taxpayer meets this burden, the tax assessment record loses the weight previously afforded to it. *Green v. Schuylkill County Board of Assessment Appeals*, 772 A.2d 419, 425-26 (Pa. 2001) (citing *Deitch Company v. Board of Property Assessment*, 209 A.2d 397, 402 (Pa. 1965)). If the taxing authority presents rebuttal evidence, the trial court must determine the weight to be afforded all the evidence. *Green*, 772 A.2d at 426.

assessments, and the Taxing Authorities responded with their own expert and documentary evidence.

Frank Saidara, Taxpayer's vice president for development, testified that in January of 2016, Taxpayer entered into an agreement to purchase the Crozer-Keystone Health System. The transaction involved numerous real properties, including Springfield Hospital and the parking garage (collectively, Springfield property). Taxpayer retained an appraiser to allocate the purchase price among the properties acquired in the transaction in order to calculate the real estate transfer taxes. With respect to the two properties at issue in this appeal, the deeds recorded a total sales price of $10.9 million.

Taxpayer's real estate appraisal expert, Ryan Hlubb, prepared a report on the fair market value of the Springfield property, which was submitted into evidence.[3] The report treated Springfield Hospital and the parking garage as a single economic unit because a hospital must have parking for patients and visitors.

At the hearing, Hlubb testified that he used three standard appraisal methods: (1) sales comparison, (2) income capitalization, and (3) cost approach. Hlubb relied principally on his sales comparison valuation, which assumes that an informed purchaser will pay no more for a property than the cost of an existing property with the same utility. Hlubb identified four comparable sales in the mid-Atlantic market involving hospitals of at least 75,000 square feet and with onsite parking. After adjusting for differences between those properties and the Springfield

---

[3] Fair market value, "while not easily ascertained, is fixed by the opinions of competent witnesses as to what the property is worth on the market at a fair sale." *Grand Prix Harrisburg, LLC v. Dauphin County Board of Assessment Appeals*, 51 A.3d 275, 277 (Pa. Cmwlth. 2012) (quoting *Buhl Foundation v. Board of Property Assessment, Appeals and Review of Allegheny County*, 180 A.2d 900, 902 (Pa. 1962)).

property, Hlubb concluded that under the sales comparison approach, the fair market value of the Springfield property for tax years 2017 and 2018 was $6.6 million.

Hlubb also valued the Springfield property under the cost approach, which is "based on the concept that an informed investor would not willingly pay more for the subject property than would be necessary to develop an alternative providing economically equivalent benefits." *In re PP&L, Inc.*, 838 A.2d 1, 11 (Pa. Cmwlth. 2003). Hlubb testified that the cost approach uses two methods: replacement and reproduction. Replacement cost estimates the cost to construct, as of the date of the appraisal, a building of utility equal to the subject property using modern material and current design standards. Reproduction cost estimates the cost to construct an exact duplicate using the same materials, construction standards, design layout and quality, including all deficiencies, adequacies and obsolescence. Hlubb used the replacement cost approach to develop a cost of $70,589,653, which he depreciated by $64,559,769 for the condition of the current building. This produced a fair market value under the cost approach of $6.8 million for the hospital and parking garage, to which he added $726,000 for the value of the land.[4]

Hlubb testified that he gave weight to the sales comparison approach, some weight to the cost approach and little weight to the income capitalization approach.[5] Hlubb opined that the fair market value of the Springfield property for tax years 2017 and 2018 was $6.6 million.

---

[4] Hlubb valued the land on the basis of four comparable sales. He concluded that the land had a value of $200,000 per acre for a total fair market value of $726,000.

[5] In his income approach, Hlubb used the direct capitalization technique. This takes a one-year snapshot of stable income and applies a capitalization factor to determine fair market value. Hlubb determined annual net operating income of $723,914, to which he applied a capitalization rate of 12.5%. This yielded a fair market value of $5.8 million.

In rebuttal, the Taxing Authorities introduced the report of their expert real estate appraiser, John J. Coyle, III, and offered his testimony. Coyle used the sales comparison and cost approaches and separately appraised the hospital and the parking garage.[6] He explained that the parking garage supported the Healthplex Building and medical office building, as well as Springfield Hospital.

For Springfield Hospital, Coyle identified four comparable sales: Brandywine Hospital, a 263,000 square foot building that sold for $40 million; Belmont Center for Comprehensive Treatment, a 204,000 square foot building that sold for $35 million; Jennersville Hospital, a 187,000 square foot building that sold for $34 million; and the Rothman Institute, a 121,000 square foot building that sold for $35 million. Based on these sales, Coyle fixed a price of $115 per square foot, which yielded a total of $12.1 million for Springfield Hospital (which has 105,219 square feet).

For the cost approach to Springfield Hospital, Coyle agreed that the appraiser combines the value of the land with the estimated cost to rebuild the current structure. The cost approach also requires a reduction to account for the depreciation of the current building.

To value the land, Coyle identified three comparable institutional land sales. The first was the sale of 10.99 acres to the Chester Fund for Education and Arts at $209,000 per acre. The second was the sale of 13.2 acres located in the Chichester Business Park at $233,850 per acre. The third was a sale of nine acres located on the Baltimore Pike to Children's Hospital at $437,500 per acre. Adjusting for differences in location, Coyle selected $360,000 per acre, which he applied to

---

[6] Coyle did not develop the income approach because he could not obtain rental information or operating costs.

the 29% of the 11.1 acres owned by the land condominium that is occupied by Springfield Hospital. This produced a total of $1,149,440, which he rounded to $1,150,000.

To estimate the cost of rebuilding Springfield Hospital, Coyle reviewed property reports and toured the property. Coyle then divided Springfield Hospital into 14 general categories or systems: foundation, frame, exterior walls, interior walls, roof, ceiling, HVAC system, exterior lighting, interior lighting, flooring, plumbing, fire protection, parking and landscaping. Coyle arrived at a reproduction cost of $29,122,300, which he depreciated by $16,616,300. This produced a reproduction cost of $12,522,000. Coyle estimated that $650,000 was owed to the condominium association for repairs and upgrades to the common area. These additional factors reduced the total cost valuation to $11,206,000. Adding the value of the land yielded a fair market value of $12,321,000.

Reconciling the sales comparison and cost approaches, Coyle opined that Springfield Hospital had a fair market value of $12 million.

For the parking garage, Coyle used only the sales comparison approach.[7] The parking garage is a 299,250 square-foot, 4-story building, with 834 parking spaces. Coyle determined that the parking garage occupies 4% of the 11.1 acres owned by the land condominium.

Coyle looked at the sale of comparable parking garages that supported adjacent medical facilities to determine a sales comparison valuation. The first sale involved a garage of 126,468 square feet in Philadelphia that sold for $30 per square

---

[7] Coyle testified that he initially chose to do an income approach on the parking garage and requested revenue on garage utilization from Taxpayer. Taxpayer provided revenues and expenses associated with the daily pay receipts of the garage but not on the monthly users' information to do an income capitalization approach.

foot. The second was for a parking garage of 177,961 square feet in Wilmington, Delaware, that sold at $46 per square foot; the third was for a parking garage of 98,030 square feet in Center City Philadelphia that sold for $79.50 per square foot. The fourth was for a parking garage of 266,500 square feet in Philadelphia that sold for $17 per square foot.

Using his judgment and experience, Coyle estimated that the parking garage would sell for $7 per square foot. This produced a total of $2,094,750, which he rounded to $2.1 million.

In sum, Coyle estimated the fair market value of Springfield Hospital to be $12 million for 2017. For the parking garage, Coyle estimated a fair market value of $2.1 million. Accordingly, the two properties had a combined fair market value of $14.1 million.

On cross-examination, Coyle testified that his cost approach to Springfield Hospital combined reproduction cost and replacement cost techniques. Coyle testified that he "did as close to a pure reproduction cost as can be done." Notes of Testimony (N.T.), 10/9/2018, at 160; Reproduced Record at 522a (R.R. __). Coyle stated he did what he described as a "reproduction cost study;" this reproduces

> the exact same square footage that is there and then same type of heating system, same number of elevators, the same number of floors, the same amount of roof area, the same amount of floor area, the same partition inventory and then we use a standard price for the unit. So if you were talking about a window price, we would take – if we observe that it looks like an average window, the installed window can go from $100 a window to $1,000 a window. So we would price it at what we think the most comparable level; sometimes the very best, sometimes the average, sometimes the least.

N.T., 10/9/2018, at 161-62; R.R. 523a-24a.

7

On October 28, 2019, the trial court issued two adjudications,[8] one for Springfield Hospital and one for the parking garage. The trial court concluded that the fair market value of the Springfield Hospital was $12 million for tax years 2017 and 2018, and the fair market value of the parking garage was $2.1 million for tax years 2017 and 2018. In each adjudication, the trial court found that the "experts' approaches in appraising the fair market value of the Property differed in significant ways, especially as to the details of their respective evaluations." Trial Court Parking Garage Adjudication at 2, Finding of Fact No. 6; R.R. 1485a; Trial Court Hospital Adjudication at 2, Finding of Fact No. 6, R.R. 1489a. The trial court also found that "[b]oth experts offered complete and detailed explanations of their methods . . . ." Trial Court Parking Garage Adjudication at 2, Finding of Fact No. 7; R.R. 1485a; Trial Court Hospital Adjudication at 2, Finding of Fact No. 7, R.R. 1489a. Finally, the "court found the testimony offered by Mr. Coyle credible and his approach to the Property's valuation comprehensive, sensible and believable." Trial Court Parking Garage Adjudication at 2, Finding of Fact No. 8; R.R. 1485a; Trial Court Hospital Adjudication at 2, Finding of Fact No. 8, R.R. 1489a.

Taxpayer appealed the trial court's orders on November 1, 2019.[9]

---

[8] The trial court's October 28, 2019, orders were filed on the docket on November 1, 2019.

[9] On November 22, 2019, the Springfield School District filed a motion for reconsideration of the October 28, 2019, orders to correct a typographical error. The trial court did not act on the School District's motion. Instead, on January 17, 2020, the trial court issued an opinion stating, in part, that the adjudication set the parking garage valuation at $2.1 million in Finding of Fact No. 12, but in Conclusion of Law No. 6, it referred to that value as $1.2 million. Trial Court Order, 1/17/20, at 1. The correct figure was $2.1 million. *Id.*

## Appeal

On appeal,[10] Taxpayer raises four arguments.[11] First, Taxpayer has filed an application to vacate the two orders because the presiding judge, the Honorable John L. Braxton, held a position on the Philadelphia Tax Board at the same time he adjudicated these cases.[12] Second, Taxpayer argues that the trial court erred by not allowing Taxpayer to introduce evidence on tax year 2019 because its assessment appeal was pending when the deadline to appeal tax year 2019 arose. Third, Taxpayer argues that the trial court did not adequately explain its decision because it did not make a finding on Hlubb's credibility or state any reason for rejecting his valuation. Fourth, Taxpayer argues that the trial court erred by accepting Coyle's cost approach, which was fundamentally unreliable because it did not comply with either of the two recognized appraisal methods for doing a cost valuation of property.

Article V, Section 17(a) of the Pennsylvania Constitution prohibits a judge from holding "an office or position of profit in the government of the United States, the Commonwealth or any municipal corporation or political subdivision thereof[.]" PA. CONST. art. V, §17(a). In its application to vacate, Taxpayer asserted that Senior Judge Braxton held a "position of profit" with the Philadelphia Tax Board at the same time he acted as a judge on the instant tax appeals, which rendered his two orders null and void. Taxing Authorities responded that Taxpayer's

---

[10] In tax assessment appeals, this Court determines whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Douglass Village Residents Group v. Berks County Board of Assessment Appeals*, 84 A.3d 407, 408 n.3 (Pa. Cmwlth. 2014). Our standard of review for questions of law is *de novo*, and our scope of review is plenary. *Id.*

[11] For purposes of this opinion, we have rearranged the order of Taxpayer's issues on appeal.

[12] Taxpayer filed its application to vacate on March 6, 2020, and the Court referred the application to the merits panel.

9

application to vacate was untimely filed and, further, that the Pennsylvania Supreme Court approved Senior Judge Braxton's completion of his judicial assignment after his appointment to the Philadelphia Tax Board.

Taxpayer supported the application to vacate with affidavits and public record searches that it attached to its application. Following argument before the merits panel, the Court concluded that a record was needed on Taxpayer's assertion of incompatible service and Taxing Authorities' response thereto. Accordingly, the Court entered an order remanding this matter to the trial court with directions to develop an evidentiary record on the following factual questions:

> (1) The date on which Senior Judge Braxton assumed his position on the Philadelphia Board of Revision of Taxes and began receiving compensation therefor;
>
> (2) Whether Senior Judge Braxton's continued work on the above-captioned assessment appeals of Prospect Crozer, LLC while simultaneously serving on the Philadelphia Board of Revision of Taxes was approved in writing or in some other way by the Pennsylvania Supreme Court; and
>
> (3) The date on which Prospect Crozer, LLC learned that when Senior Judge Braxton issued the orders in the above-captioned appeals, he had already assumed his position with the Philadelphia Board of Revision of Taxes.

Court Order, 3/17/2022.

On April 20, 2022, the trial court conducted a hearing. The record consists of a stipulation of the parties; Taxpayer's public record searches and affidavits; and the testimony of Senior Judge Braxton. A summary of the parties' stipulation, the affidavits, and Senior Judge Braxton's testimony is set forth in *In Re: Appeal of Prospect Crozer LLC from the Decision of the Board of Assessment Appeals of Delaware County, PA*, __ A.3d __ (Pa. Cmwlth., Nos. 1596-1599, 1600-1629 C.D. 2019, filed September 28, 2022) (*Appeal of Prospect Crozer*). Thereafter,

10

on May 4, 2022, the trial court issued an order finding, *inter alia*, that Senior Judge Braxton began to receive compensation for his position with the Philadelphia Tax Board on June 16, 2019, and he ended his judicial service on January 24, 2020. The trial court credited Senior Judge Braxton's testimony that he notified the Administrative Office of Pennsylvania Courts of his appointment to the Philadelphia Tax Board and received approval to complete his outstanding judicial assignments. Taxpayer sought reconsideration, but it was denied.

After receipt of the trial court's May 4, 2022, order, the parties filed supplemental briefs with this Court to address the trial court's order.

**Analysis**

**I. Senior Judge Braxton's Incompatible Service on the Philadelphia Tax Board**

Taxpayer's claims under Article V, Section 17(a) of the Pennsylvania Constitution, PA. CONST. art. V, §17(a), are identical to those it raised in *Appeal of Prospect Crozer*, __ A.3d at __, slip op. 17-29. There, we held that Senior Judge Braxton forfeited his judicial office no later than June 16, 2019, when he began to receive compensation in his position of profit on the Philadelphia Tax Board. Because Senior Judge Braxton's orders were issued after he forfeited his judicial office, they were null and void. For all the reasons set forth in *Appeal of Prospect Crozer*, __ A.3d at __, slip op. at 17-29, which is incorporated by reference herein, we grant Taxpayer's application to vacate the trial court's orders.

**II. 2019 Tax Appeal**

Taxpayer argues that the trial court erred by not making a determination on the fair market value of the two properties for tax year 2019. Taxpayer filed its appeal on December 13, 2016, and at that time, the only tax years at issue were 2017 and 2018. Because the trial continued into September 2018, Taxpayer was deemed to have automatically appealed the 2019 assessment, which had an appeal deadline

11

of August 1, 2018. The trial court denied Taxpayer's request to present evidence on tax year 2019 because the deadline for the exchange of expert reports was April 2018. Taxpayer contends that the trial court erred by refusing to hear evidence on the 2019 tax year, which in itself requires a remand.

Taxing Authorities respond that Taxpayer did not produce expert testimony on the fair market value of the hospital and the parking garage as of August 1, 2018, for tax year 2019. Accordingly, the trial court properly limited the matter to tax years 2017 and 2018.

The Consolidated County Assessment Law provides that when a tax appeal is pending, subsequent tax years are also included in the appeal. Section 8854(a)(5) states, in relevant part, as follows:

> If a taxpayer or taxing district has filed an appeal from an assessment, so long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute, *the appeal will also be taken as an appeal by the appellant on the subject property for any valuation for any assessment subsequent to the filing of an appeal with the board and prior to the determination of the appeal by the board or the court*. This provision shall be applicable to all pending appeals as well as future appeals.

53 Pa. C.S. §8854(a)(5) (emphasis added). This automatic appeal provision eliminates duplicative, precautionary tax appeals and is not intended "to act as a trap by which taxpayers can be deprived of their opportunity to be heard." *In re P-Ville Associates*, 87 A.3d 898, 903 (Pa. Cmwlth. 2014). Further, "an appeal is pending before common pleas as long as the court has jurisdiction to grant a final order

12

disposing of the matter[.]"[13] *525 Lancaster Avenue Apartments, LP v. Berks County Board of Assessment Appeals*, 111 A.3d 1231, 1236 (Pa. Cmwlth. 2015).

Here, Taxpayer appealed the assessments of Springfield Hospital and the parking garage for tax years 2017 and 2018. This appeal automatically included the 2019 tax year because the 2017 and 2018 tax appeals were still pending as of August 1, 2018. Therefore, the trial court erred in not allowing Taxpayer to introduce evidence on the fair market value of Springfield Hospital and the parking garage for the 2019 tax year.

This error, in itself, requires a remand to determine Taxpayer's assessment for 2019.

### III. Adequacy of Adjudications

Taxpayer argues that the trial court did not adequately explain its decision. Specifically, the trial court offered no justification for adopting Coyle's valuation over that of Hlubb and did not acknowledge that one of the Taxing Authorities, Springfield Township, agreed with Taxpayer's valuation. Taxing Authorities respond that Taxpayer merely challenges the weight assigned by the trial court to the expert testimony offered by Taxing Authorities.

In an assessment appeal, the trial court hears the matter *de novo*. *Grand Prix Harrisburg, LLC,* 51 A.3d at 280. As finder of fact, the trial court has exclusive province over all matters of credibility and evidentiary weight. Additionally, the trial court has the discretion to decide, based on the testimony of competent

---

[13] In *P–Ville Associates*, the taxpayer sought to appeal *nunc pro tunc* its 2011 interim assessment. While the appeal was pending before the trial court, the taxpayer's property was assessed for tax year 2013; the taxpayer did not appeal the 2013 assessment. The trial court dismissed the 2011 assessment appeal because the taxpayer did not perfect an appeal. Because of the dismissal, the trial court held that the 2013 assessment was not automatically appealed under Section 8854(a)(5) of the Consolidated County Assessment Law. This Court disagreed and reversed on appeal.

13

witnesses, which valuation method to use to value a particular property. *Id.* "[T]he trial court must state the basis and reasons for its decision." *Green*, 772 A.2d at 433 (quoting *Westinghouse Electric Corporation v. Board of Property Assessment, Appeals and Review of Allegheny County*, 652 A.2d 1306, 1312 (Pa. 1995)). "The function of the trial court in a tax assessment matter is not to independently value the property, but to weigh the conflicting testimony and values expressed by the experts and, based on the credibility of their opinions, arrive at a valuation." *Downingtown Area School District v. Chester County Board of Assessment Appeals*, 131 A.3d 152, 157 (Pa. Cmwlth. 2015). "The trial judge . . . does not have the right to render a decision without stating its reasons therefor . . . ." *Westinghouse Electric Corporation*, 652 A.2d at 1312. Finally, the trial court's findings will not be disturbed if they are supported by substantial evidence in the record. *Herzog v. McKean County Board of Assessment Appeals*, 14 A.3d 193, 200 (Pa. Cmwlth. 2011).

In *Grand Prix Harrisburg, LLC*, 51 A.3d 275, this Court vacated a trial court's order setting a property's fair market value because the trial court did not resolve the differences in capitalization rates proposed by two experts; further, the taxing authority's expert admitted that his sales comparison valuation was flawed. This Court concluded:

> Although it is the trial court's prerogative to deem one expert more credible than the other, the trial court must explain its decision. Here, the trial court failed to consider, and resolve, the differences in the two capitalization rates and the fact that [the taxing authority's appraiser's] sales comparison approach was flawed, by his own admission.

14

*Grand Prix Harrisburg, LLC*, 51 A.3d at 282. The trial court's stated reason for using the taxing authority's expert appraisal was that he used actual income figures, not averages, in his capitalization of income method. However, both experts used nearly the same income figures. The real difference was in their different rates of capitalization, but the trial court did not address this conflict.

Where the court finds competing experts to be competent and credible, it may determine that the fair market value of the property lies between the valuations offered by the experts. *Westinghouse Electric Corporation*, 652 A.2d at 1312. When splitting the difference between conflicting testimony as to value, it is not necessary for the trial court to articulate the basis for its valuation.

The trial court's adjudications do not allow meaningful review by this Court. On remand, it will be the responsibility of the trial court, by a newly assigned jurist, to resolve the conflict between the expert opinions and their methodology. *Grand Prix Harrisburg, LLC*, 51 A.3d at 282. The trial court's new assessment determination will require a clear statement of "the basis and reasons for its decision" on the valuation of the two properties that are the subject of this tax assessment appeal. *Westinghouse Electric Corporation*, 652 A.2d at 1312.

## Conclusion

Senior Judge Braxton vacated his position as senior judge by operation of law on June 16, 2019, when he began to receive compensation for his incompatible service on the Philadelphia Tax Board, which was a "position of profit in the government of the United States, Commonwealth or any municipal corporation or political subdivision thereof." PA. CONST. art. V, §17(a). The two orders issued on Taxpayer's tax appeals are null and void. We grant Taxpayer's application to vacate the trial court's orders. This requires a remand of these matters

15

for a decision by a newly assigned jurist that will state "the basis and reasons for the court's decision," *Westinghouse Electric Corporation*, 652 A.2d at 1312, and determine Taxpayer's assessment for 2019. The trial court may supplement the record if deemed appropriate but may not supplant the existing record.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Fizzano Cannon did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Prospect Crozer LLC :
from the Decision of the Board of :
Assessment Appeals of Delaware :
County, PA : Nos. 1727-1728 C.D. 2019
:
Appeal of: Prospect Crozer LLC :

**ORDER**

AND NOW this 28th day of September, 2022, Prospect Crozer LLC's Application to Vacate Orders on Appeal Because of Structural Error is GRANTED, and the orders of the Court of Common Pleas of Delaware County, dated October 28, 2019, are VACATED. This case is REMANDED for a new decision in accordance with the forgoing opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita