North Park Village, Inc., Appellant, *v.* Board of Property Assessments, Appeals and Review.

434

Argued March 22, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Frank W. Ittel*, with him *A. Sieber Hollinger*, and *Reed, Smith, Shaw & McClay*, for appellant.

*James Victor Voss*, Assistant County Solicitor, with him *Francis A. Barry*, First Assistant County Solicitor, and *Maurice Louik*, County Solicitor, for Board, appellee.

OPINION BY MR. JUSTICE EAGEN, September 25, 1962:

This appeal involves the validity of the tax assessment on real estate in Ross Township, Allegheny County, for the 1959-1961 triennial.

The property consists of 64.49 acres of land, of which 31.93 acres are usable. On the latter portion, the construction of a large shopping center was completed in the year 1957. In the year 1958, the assessment for real estate tax purposes totaled $2,342,240, of which $287,240 was on the land. For the triennial assessment for the years 1959, 1960 and 1961, the valuation was increased to an aggregate total of $3,101,400; the land assessment being fixed at $1,046,400 and the buildings at $2,055,000.

The lower court sustained the assessment, as indicated above, placed thereon by the Board of Property Assessments. The landowner appeals.

The correctness of the assessment placed on the improvements is not here questioned, nor was it attacked below. It is contended, however, that the assessed valuation of the land itself exceeds the fair market value thereof and also is in violation of the constitutional requirement of uniformity. Neither contention is sustained by the record.

At the hearing in the court below, the appellee, Board of Property Assessments, Appeals and Review of Allegheny County, introduced into evidence the record of the assessment and rested its case. This established prima facie the validity of the assessment: *Carnegie v. Pittsburgh*, 357 Pa. 138, 53 A. 2d 425 (1947); *Buhl Foundation v. Board of Property Assessment, Appeals and Review*, 407 Pa. 567, 180 A. 2d 900 (1962). It then became the burden of the landowner to show by the weight of the competent evidence that the assessment was incorrect, arbitrary and in disregard of the owner's rights: *Chatfield v. Board of Revision of Taxes*, 346 Pa. 159, 29 A. 2d 685 (1943); *Hammermill Paper Company v. Erie*, 372 Pa. 85, 92 A. 2d 422 (1952); and, *Buhl Foundation v. Board of Property Assessment, Appeals and Review*, supra.

Is the assessment excessive?

As to the fair market value of the property, the appellant-landowner called three witnesses: (1) Charles J. Leslie, a special land assessor for the board, who recommended to the board the assessment complained of (he was called as for cross-examination); (2) Frank T. Trobaugh; and, (3) Charles W. Rupp; the latter two being real estate experts. Trobaugh testified that the *actual or fair market value of the entire property, including land and improvements was $3,480,000.* He estimated the value of the unimproved land to be $580,-000. Rupp testified that the fair market or actual market value *of the entire property* was $3,775,000 and opined that the land value in itself was $611,250. It is clear from this testimony that the total assessment for tax purposes is less than the value placed thereon by these witnesses. Neither expert testified that the total assessment *of the land and buildings* was in excess of the total actual or fair market value of the property. In fact, according to their estimates, the ratio of the assessment to the total fair market value of the entire property was 89 and 67 per cent respectively.

In Allegheny County, real estate is required to be assessed according to the actual value thereof: Act of May 22, 1933, P. L. 853, §402, as amended by the Act of May 16, 1939, P. L. 143, §1, 72 P.S. §5020-402. This means the *entire* property and not merely its constituent elements. While it is perfectly legal for the assessor to enumerate the constituent parts of a single subject of taxation and the value placed on each, it is the reasonableness of the total assessment that is controlling. The total assessment of both land and improvements as a unit is the factor to be considered in determining the correctness of the assessment: *Pittsburgh Terminal Coal Co. Appeals,* 83 Pa. Superior Ct. 535 (1924); and, *Hammermill Paper Co. v. Erie,* supra. Of course, the unit or total assessment may not exceed the fair market value of the *entire* property. On ap-

peal to the court of common pleas, *"the question . . . is not whether the value placed upon certain constituent elements properly entering into the value of the subject of taxation is just and equitable, but whether the assessment of the subject as a whole is just and equitable"*[1]: *Pittsburgh Terminal Coal Co. Appeals,* supra, at 537, 538. See also, *Hammermill Paper Company v. Erie,* supra. The evidence of appellant's own witnesses, as hereinbefore pointed out, establishes that the assessment when reviewed in relation to the value of the entire property is just and equitable.

Does the assessment violate the rule as to uniformity?

The law requires that for tax purposes real estate as a class shall be assessed in uniformity. *Brooks Bldg. Tax Assessment Case,* 391 Pa. 94, 137 A. 2d 273 (1958); and *Buhl Foundation v. Board of Property Assessment, Appeals and Review,* supra. The lower court concluded that the appellant failed to establish that this paramount rule was violated. We agree.

It appears that in assessing the land upon which all shopping centers were constructed in the area and neighborhood in which the property involved is located, that the board followed the square foot rule. In assessing smaller tracts of land used for other commercial purposes, the board used the front foot rule method. There is nothing illegal in this procedure, if a different ratio of assessments as to market value does not result. See, *Hammermill Paper Company v. Erie,* supra. The testimony of Mr. Leslie clearly points out that the reason for following a different mechanical procedure was for practical purposes which tended to achieve rather than to violate the rule of uniformity. More importantly, no different ratio of assessments to the market value resulted.

---

[1] Emphasis supplied.

Appellant attempted to show the existence of different ratios of assessments to market value by the record of assessments made on other alleged comparable properties, which were located in areas approximately twenty-five miles removed from that involved. These properties were not comparable for this purpose, particularly in view of the fact that other similar properties located close by to that involved were available for comparison purposes.

Finally, appellant complains that Mr. Leslie in making his recommended assessment did not consider the rental income of the property, which is one of the necessary factors. However, it is the board that finally determined the assessment and the record is clear that all factors were taken into consideration by this tribunal in coming to a conclusion.

Order affirmed.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

The subject property consists of approximately 65 acres of land, of which 32 acres are agreed to be usable. A shopping center which was completed in 1957 was built upon the land. The next year the property was assessed at a total of $2,342,240 of which $287,240 was allocated on the records as the assessment of the land. For the 1959 triennial assessment, the valuation was increased to $3,101,400. The records disclose that the increase was in the valuation of the land so that the land was assessed at $1,046,400.

At the trial of the case in the court below, the parties stipulated that there was no controversy as to the valuation of the buildings. After hearing, the lower court determined that appellant failed to meet its burden of proof necessary to establish that the land assessment lacked uniformity with the other assessments in the county in contravention of Art. IX, §1, Pennsylvania Constitution of 1874 and dismissed the appeal.

While I recognize that the majority correctly decided the briefed and argued issues, I would vacate the lower court's action and remand the record for further proceedings because of the stipulation which left only the question of the land valuation for the court's determination. The Act of 1939, incorporating the valuation of the Act of 1933, May 22, P. L. 853, as amended, 72 P.S. §5020-402, and the cases decided—*Buhl Foundation v. Board of Property Assessment, Appeals and Review*, 407 Pa. 567, 180 A. 2d 900 (1962), and *Brooks Building Tax Assessment Case*, 391 Pa. 94, 137 A. 2d 273 (1958), require that each property be assessed at its actual—i.e., fair market value. This does not mean the total of the fair market value of the component parts such as the building, land, fixtures, roads, black toppings, sewers, drainage, facilities, or any other individual items which go to make up or are on the property. Rather, the statutory provision speaks in terms of the "property"—i.e., the *entire* property and not the sum of its constituent elements.

Just as in *Elgart v. Philadelphia*, 395 Pa. 343, 149 A. 2d 641 (1959), where we pointed out that the valuation of a parcel of land might exceed the sum of the value of the individual contiguous tracts comprising it, so it is evident that the fair market value of the different components that make up the total property might not reflect the fair market value of the entire property. See *McSorley v. Avalon Borough School District*, 291 Pa. 252, 139 Atl. 848 (1927).

If raw land which has a fair market value of $1,000 is improved with black top which costs $1,000 and a building which costs $1,000 the fair market value of the property does not necessarily then become $3,000. The type of improvements to the property which were made may not have enhanced its fair market value in the amount of the costs of improvements and accordingly, the fair market value of the entire property in-

stead of being $3,000 might possibly be only $2500. Conversely, if the improvements were wisely made, it is possible that land having a fair market value of $1,000 to which $2,000 of improvements had been added, might have an enhanced fair market value of $3,500 or $4,000. Thus, it can readily be seen that an addition of the so-called fair market value of the component parts may not add up to the fair market value of the total property.

In an action to determine the actual (fair market) value of a property for assessment purposes, it is improper, as was done in this instance, to stipulate that there was no controversy as to the valuation of the improvements and to limit the testimony in the contest to only the question of the land valuation. The reason for this is readily apparent if we resort once again to another simple example.

The unimproved land might have a fair market value of $1,000; the actual cost of the building might be $1,000; and the fair market value of the entire property might be $2500. If it were stipulated by the parties that the value of the building was $1,000, that amount would be subtracted from the fair market value of $2500, and the contest would concern only the $1500 assessment of the land. It might be clearly demonstrable by the party contesting the assessment that the fair market value of the land is only $1,000. The party would then contend, therefore, that the total assessment of the property for $2500 is excessive and does not represent the "true" fair market value of $2,000 which the contestant arrives at by adding $1,000 for the fair market value of the land, and $1,000 for the improvements. Thus, by a deceptively simple process, a taxpayer can distort in his favor the true fair market value of the property or the taxing authority might also do the same.

Accordingly, it is the fair market value of the *entire* property which must be determined in assessing a prop-

erty and not the sum of its parts. This is not a novel proposition in the law of this Commonwealth. In the *Buhl* case, we held that the depreciated reproduction cost of the building had no probative value for any purpose in fixing the fair market value of improved real estate for tax purposes. The reason is clear. Reproduction cost new less depreciation has no relationship to the fair market value. Separated from the land, the building has no market value beyond salvage which in most cases does not compensate for the cost of removal.

To the same effect is *Algon Realty Co. Tax Assessment Appeal,* 329 Pa. 321, 198 Atl. 49 (1938). These cases indicate the well-established policy of our court to require the consideration of the entire property, both land and improvements, in determining the propriety of an assessment. While, as a practical matter, valuations of the component parts of the property might be resorted to as a guide by the assessing officers in establishing the fair market value of the total unit in an effort to obtain uniformity, they are not, however, rigid separate determinations binding upon the parties which can be stipulated either in or out of a case as was done here.

Fair market value is a totality; it is reflected by the price which a purchaser, willing but not obligated to buy, would pay an owner, willing but not obligated to sell, taking into consideration all uses to which the property is adopted and might in reason be applied. *Buhl Foundation,* supra, and *Brooks Building Tax Assessment Case,* supra. It is only this totality which may be considered in assessing property, and it is only the totality of the assessment which may be the subject of an appeal.

I would vacate and remand the record for proceedings in conformance with this dissent.