IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Appeal of Linehan | : | **CASES CONSOLIDATED** |
| From a Decision of the Board of | : | No.  1167 C.D. 2020 |
| Revision of Taxes | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |
| | | |
| Appeal of Levin | : | |
| From a Decision of the Board | : | No.  1168 C.D. 2020 |
| of Revision of Taxes | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |
| | | |
| In Re: Appeal of Linehan | : | |
| From a Decision of the Board of | : | No.  1313 C.D. 2020 |
| Revision of Taxes | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |
| | | |
| In Re: Appeal of Levin | : | |
| From a Decision of the Board | : | No.  1314 C.D. 2020 |
| of Revision of Taxes | : | |
| | : | |
| Appeal of: City of Philadelphia | : | Argued: June 23, 2022 |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                         FILED: November 9, 2022

The City of Philadelphia (City) appeals from two orders of the Court of Common Pleas of Philadelphia County (trial court), which sustained appeals filed by Alexandra and Timothy Levin (Levins) and Molly and Charles Linehan

(Linehans) (collectively, Taxpayers).[1]  Essentially, the City contends that Taxpayers failed to rebut the *prima facie* validity of the City's tax assessments of Taxpayers' properties.

We do not reach the City's contention.  Upon review, the trial court's December 2, 2020 order constitutes a legal nullity.  We therefore quash the appeals at dockets 1313 and 1314 C.D. 2020, as they are not properly before this Court.  Further, the trial court's September 30, 2020 order fails to comply with Section 518.2(a)-(b) of The General County Assessment Law (Assessment Law), Act of May 22, 1933, P.L. 853, art. V, *as amended*, added by the Act of December 13, 1982, P.L. 1160, 72 P.S. § 5020-518.2(a)-(b).  We therefore vacate that order, appealed at dockets 1167 and 1168 C.D. 2020, and remand for further proceedings consistent with this memorandum opinion.

## I. BACKGROUND[2]

In 2014, the Levins bought 411 West Moreland Avenue, and the Linehans bought 415 West Moreland Avenue (collectively, Properties), both of which were then vacant lots in Chestnut Hill, Philadelphia.  The City's Office of Property Assessment (OPA) valued both vacant lots at $215,000.  Taxpayers contracted to have a single-family home built on each property.

Taxpayers received a ten-year tax exemption from the City on the assessed values of their new homes.  In 2018, OPA valued the taxable land and set

---

[1] We granted the City's application to consolidate these appeals.  Cmwlth. Ct. Order, 8/19/21.

[2] Because the record was slim, and because the facts are generally undisputed, some of the facts herein were sourced from Taxpayers' bench memoranda.  Further, for ease of disposition, we may refer to one rounded figure in discussing the valuations at issue and specify the exact valuations for each property only when necessary.

the market value for each property.[3] Taxpayers appealed to the City's Board of Revision of Taxes (Board), which decreased the market value and set a new market value for each property.

Taxpayers appealed the Board's decision to the trial court. Taxpayers filed bench memoranda, which attached various exhibits. The trial court held a hearing, at which the parties stipulated to the accuracy of the current total assessed value of the Properties based on OPA records attached to Taxpayers' bench memoranda. Notes of Testimony (N.T.) Hr'g, 9/21/20, at 9.[4] Taxpayers presented the testimony of Joseph Benincasa, a real estate appraiser.[5] The City did not present witnesses or introduce evidence in rebuttal.

On September 30, 2020, the trial court sustained the appeals in favor of Taxpayers and adverse to the City, further reducing the assessed market value of the land. The trial court's order specified only the market value of the land for 2018 to 2021. Order, 9/30/20.[6] The City timely appealed from that order.

---

[3] Specifically, for 411 W. Moreland Avenue, OPA valued the taxable land at $700,321, and the market value at $2,414,900. For 415 W. Moreland Avenue, OPA valued the taxable land at $725,000, and the market value at $2,500,000.

[4] For example, for year 2019, the OPA record states that the total assessed market value of the property located at 411 W. Moreland Ave. was $2,090,000. This total included a tax-exempt improvement assessed at $1,483,900 and taxable land assessed at $606,100.

[5] Mr. Benincasa testified that he compared the sales of five similar properties to the Properties. N.T. Hr'g at 14, 16. Mr. Benincasa testified as to the amounts for which the properties were sold, the square footage of the land, and the value per square foot. Based on the values of the five properties, Mr. Benincasa testified that the land value for the Properties was $300,000, at $12.18 per square foot. *Id.* at 20-21.

[6] To be clear, this order did not designate the total value of either Property, nor did it identify the value of the single-family home built thereon. In relevant part, the order stated:

It is further Ordered that the market value of the land at 411 W. Moreland Avenue
. . . is hereby set as follows: 2018: $300,000
                                                2019: $325,000
(Footnote continued on next page…)

3

Meanwhile, the City also timely filed a motion for reconsideration/clarification. The City's motion stated that although the trial court's order set values for the land, it was "silent" as to "the other components of the assessment." City's Mot. for Recons., 10/22/20, ¶ 4. On December 2, 2020, the trial court granted in part the City's motion for reconsideration, and the City timely appealed from this order.[7]

## II. ISSUES[8]

The City raises three issues, which we reordered for disposition. First, the City asserts that the trial court erred by increasing the tax-exempt value of the

---

                        2020: $350,000
                        2021: $350,000

It is further Ordered that the market value of the land at 415 W. Moreland Avenue
. . . is hereby set as follows: 2018: $300,000
                                2019: $325,000
                                2020: $350,000
                                2021: $350,000

Order, 9/30/20.

[7] In this order, the trial court clarified, for example, that for tax year 2018 for the 411 W. Moreland Ave. property, the taxable land value was $300,000, and the exempt improvement value was $1,790,000, for a total assessed value of $2,090,000. Trial Ct. Order, 12/2/20. We add that the trial court's order inadvertently swapped Taxpayers' addresses, *i.e.*, referred to 411 W. Moreland Ave. as 415 W. Moreland Ave., and vice-versa.

We add that the trial court incorrectly held that the City waived its issues by, *inter alia*, not filing a post-trial motion from the December 2, 2020 order. Trial Ct. Op., 6/7/21, at 4. Pennsylvania Rule of Civil Procedure 227.1(g) explicitly precludes the filing of a post-trial motion "in an appeal from the final adjudication or determination of a local agency." Pa.R.Civ.P. 227.1(g). Finally, we acknowledge that the City filed a separate notice of appeal at each docket number. *See generally Commonwealth v. Young*, 265 A.3d 462, 477 (Pa. 2021).

[8] "Our standard of review in a tax assessment appeal is whether the trial court rendered a decision unsupported by the evidence, committed an error of law or abused its discretion." *Residents of Buckingham Springs v. Bucks Cnty. Assessment Off.*, 60 A.3d 883, 887 (Pa. Cmwlth. 2013). We add that neither party complied with Pa.R.A.P. 2119(a), which requires that the argument portion of their appellate brief be divided into as many sections as questions presented.

Properties without evidence establishing the actual cost of construction. City's Br. at 7. Second, the City claims that the trial court erred in altering the land component of the total assessed value of the Properties. *Id.* Third, the City challenges the trial court's acceptance of a methodologically flawed report prepared by Taxpayers' appraiser. *Id.*

### III. DISCUSSION

Before discussing the City's issues, we address the timeliness of the trial court's December 2, 2020 order granting the City's motion for reconsideration. Pennsylvania Rule of Appellate Procedure 1701(b)(3) states that a trial court may grant reconsideration if (1) the motion for reconsideration was timely filed; and (2) the order granting reconsideration is filed within the applicable appeal period for the underlying order. Pa.R.A.P. 1701(b)(3)(i)-(ii). An order granting reconsideration after the applicable appeal period has expired is a legal nullity. *Orfield v. Weindel*, 52 A.3d 275, 277 (Pa. Super. 2012); *Sewickley Valley Hosp. v. Dep't of Pub. Welfare*, 550 A.2d 1351, 1353 (Pa. Cmwlth. 1988).

Here, the trial court's December 2, 2020 order granting reconsideration was filed *after* the time period for appealing the prior September 30, 2020 order had expired. Therefore, the trial court's December 2, 2020 order granting reconsideration is a legal nullity, and we must vacate that order and quash the City's appeals at dockets 1313 and 1314 C.D. 2020. *See Orfield*, 52 A.3d at 277.[9]

### A. The City's Challenge to Values in a Void Order

In support of the City's first issue, the City argues that because the record contains no evidence establishing the actual cost of constructing Taxpayers' homes, the trial court erred by changing the improvement values in its order granting

---

[9] The City's appeals at dockets 1167 and 1168 C.D. 2020 are properly before this Court.

the City's motion for reconsideration.  City's Br. at 19-20.  The improvement values challenged by the City, however, exist only in the trial court's December 2, 2020 order, which we deem a legal nullity.  Thus, we may not address the City's argument.  *See id.*[10]

### B.  The Validity of a Challenge to Only the Land Values[11]

In its second issue, the City contends that the trial court could not have altered the land component of the assessment without evaluating the total assessed

---

[10] If this Court could review the December 2, 2020 order, then we would agree that the trial court erred, as we explain in further detail below.

[11] As background, we briefly summarize the property tax assessment process.  A county may designate a "base year" for ascertaining the fair market value of all properties within the county.  *See generally Downingtown Area Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 913 A.2d 194, 202 (Pa. 2006) (*Downingtown*).  A county has significant discretion in determining when it will assess property, *i.e.*, its "base year."  For example, Philadelphia County normally reassesses its properties annually, as compared to Bucks County, which last reassessed its properties in 1972.

After a county has ascertained the market values, the county applies an "established predetermined ratio" (EPR) to calculate the assessed values.  Section 102 of the Assessment Law, 72 P.S. § 5020-102 (defining EPR as "the ratio of assessed value to market value established by the board of county commissioners and uniformly applied in determining assessed value in any year").  "To take a simple, but common, example, a county may set its base year EPR at 100% of actual value, and thus, reassess all real estate in the county at its actual value for the base year.  Each year thereafter, until the next county-wide reassessment, a given property's value may change, but its assessment ordinarily remains static, fixed at its base year level."  *Downingtown*, 913 A.2d at 202-03; *see* 53 Pa.C.S. § 8842.  For example, if 2021 is the base year, a property has a total market value of $6, and a county has elected to impose a 100% EPR, then the total assessed value is $6.

Any subsequent alterations in the value of the property are then valued "in terms of base year dollars."  *Downingtown*, 913 A.2d at 203.  "For example, if a home is replaced on a lot, the parcel's value may increase from (say) $100,000 to $200,000 in present-year dollars due to the new construction.  However, the board does not simply re-assess the property at $200,000; rather, using tables, charts, and other accepted techniques, the board determines what the improved property would have been worth in the base year-in this example, perhaps $180,000[.]" *Id.*  To take the above example, if the $6 property was improved in 2025 and was worth $12 in 2025 dollars, the Board would have to express the assessed improved value in 2021 dollars, *i.e.*, base year dollars.

6

values.  City's Br. at 20-22 (discussing *N. Park Vill., Inc. v. Bd. of Prop. Assessments, Appeals & Rev. of Allegheny Cnty.*, 184 A.2d 253 (Pa. 1962) (*Park Village*), and *Pittsburgh Miracle Mile Town & Country Shopping Ctr. v. Bd. of Prop. Assessment, Appeals & Rev. of Allegheny Cnty.*, 209 A.2d 394 (Pa. 1965) (*Miracle Mile*)).  In the City's view, these cases and their progeny stand for the proposition that a party cannot challenge "only the land component in an assessment appeal." *Id.* at 21.[12]

The Board assesses property "at the actual value thereof," *i.e.*, current market or base year market value.  Section 13 of the Act of June 27, 1939, P.L. 1199, *as amended*, 72 P.S. § 5341.13.[13]  "Actual value means market value," which is defined as the "price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Valley Forge Golf Club, Inc. v. Bd. for the Assessment & Revision of Taxes of Montgomery Cnty.*, 285 A.2d 213, 215-16 (Pa. Cmwlth. 1971) (*Valley Forge*) (citation omitted); *accord Harley-Davidson Motor Co. v. Springettsbury Twp.*, 124 A.3d 270, 279 (Pa. 2015) (*Springettsbury*).

---

[12] Taxpayers counter that these cases predated the creation of the property tax exemption at issue.  Taxpayers' Br. at 5.  Regardless, Taxpayers maintain that if OPA alters only the taxable land value, they are entitled to challenge it.  *Id.*

[13] Because the City is a county and city of the first class, *see* Section 1 of the Act of June 25, 1895, P.L. 275, *as amended*, 53 P.S. § 101, the Assessment Law governs the City's property assessment.  That statute does not define "assessment."  Our Courts have consistently defined "assessment" in the context of our tax statutes as a "valuation of property for the purpose of taxation." *City of Meadville v. Odd Fellows Home of W. Pa.*, 193 A. 662, 664 (Pa. Super. 1937); *accord Broad & Sansom Realty Co. v. Fidelity Bldg. Corp.*, 141 A. 34, 35 (Pa. 1928) (stating, "Assessed, as used in our taxing statute and as here used, means a certain sum of money, fixed under a given rate on property valuation, due and payable as taxes."); *Appeal of Hart*, 199 A. 225, 227 (Pa. Super. 1938) (explaining that the term "assessment" "more accurately [refers to] a certain sum of money fixed under a given rate on property valuation").

After a property is assessed, a taxing authority may exempt from taxation "the assessment attributable to the actual cost of construction" of the new residence. Sections 301 and 302 of the Improvement of Deteriorating Real Property or Areas Tax Exemption Act (IDRPA), Act of July 9, 1971, P.L. 206, No. 34, *as amended*, added by the Act of August 5, 1977, P.L. 167, 72 P.S. §§ 4711-301 to -302. For example, the City exempts real estate taxes "limited to that portion of the assessment valuation attributable to the cost of construction of the new eligible dwelling unit." Phila. Code § 19-1303.4(4)(a); *see* Section 303(b) of the IDRPA, 72 P.S. § 4711-303(b).[14] The Board "shall assess separately the dwelling unit and the land upon which the new residential construction stands." Phila. Code § 19-1303.4(6)(d).

A party aggrieved by an assessment may appeal to the Board, which "shall" determine the "current market value for the tax year in question" as well as the "common level ratio." Section 14(b)(1)-(2) of the Act of June 27, 1939, P.L. 1199, *as amended*, 72 P.S. § 5341.14(b)(1)-(2).[15] In turn, a party, including a

---

[14] The IDRPA permits the City "to exempt improvements to certain deteriorated residential property and areas . . . ." Section 102 of the IDRPA, *as amended*, 72 P.S. § 4711-102. To the extent that the statute and ordinance refers to "assessment" or "assessment valuation," in this context, the City explained that "the exemption value, by statute, is actually supposed to be set at the actual cost of construction, and there is no evidence in the record as to the actual cost of construction." N.T. Hr'g at 51; *cf. Citadel Dev. Corp. v. Bd. of Assessment Appeals of Erie Cnty.*, 828 A.2d 1057, 1062 (Pa. 2003) (explaining that if the actual cost of construction is less than the legislative ceiling at issue, then the entire amount is exempt); *MacDonald, Illig, Jones & Britton v. Erie Cnty. Bd. of Assessment Appeals*, 604 A.2d 306, 310 (Pa. Cmwlth. 1992) (construing statute analogous to IDRPA, in which the "actual costs" of new construction can only be assessed after construction is complete).

[15] A taxpayer may challenge a property's total assessed value by introducing evidence of the ratio of assessment value to current market value of "similar properties of the same nature in the neighborhood," *i.e.*, the "common level ratio" (CLR). *See Downingtown*, 913 A.2d at 199-200; Section 102 of the Assessment Law, 72 P.S. § 5020-102. The State Tax Equalization Board (STEB) calculates a CLR for each county based on the prior year's "arm's-length transactions" of (Footnote continued on next page…)

municipality, may appeal the Board's assessment to the Court of Common Pleas. Sections 518.1 and 520 of the Assessment Law, 72 P.S. §§ 5020-518.1, 5020-520;[16] *accord* Phila. Code § 19-1303.4(6)(d). Like the Board, the court "shall make the following determinations:" the market value and the CLR. 72 P.S. § 5020-518.2(a)(1)-(2).

For example, in *Springettsbury*, the trial court was required to determine the market value of the property and was then "required by law to apply a [CLR] for each year to arrive at the assessed value for the property . . . ." *Springettsbury*, 124 A.3d at 287 n.9. The *Springettsbury* trial court, however, did not perform that calculation, and this Court remanded to have the trial court comply with the statute. *Id.*

As in *Springettsbury*, the instant trial court's order determined the market value of the land only, which prompted the City to file a motion for reconsideration to have the trial court enumerate the other values required by statute. *See* City's Mot. for Reconsid. ¶ 4. Unfortunately, as we held above, the trial court untimely granted the motion for reconsideration. Therefore, somewhat similar to *Springettsbury*, the only valid, appealable order before us lacks the values required by statute, specifically the assessed total values of the Properties and the CLR. *See* 72 P.S. § 5020-518.2(a)-(b); *cf. Springettsbury*, 124 A.3d at 287 n.9.

---

*all* properties sold within that county. Using our illustration of a property with a 2021 total assessed market value of $6 as an example, the STEB would calculate the 2021 CLR as 1.0, and "[t]hereafter, under normal economic conditions, the STEB-calculated CLR tends to diminish each year, reflecting ongoing inflation and real estate appreciation." *Downingtown*, 913 A.2d at 203 (citations omitted). Very simply, the STEB-calculated CLR provides broad guidance to ensure that the Board and trial court do not inaccurately assess the value of the property at issue. *See generally* 72 P.S. §§ 5020-518.2(b), 5341.14(c). But because the STEB-calculated CLR is based on *all* county sales, the taxpayer may nonetheless challenge the assessment of the property at issue by introducing the CLR of similar properties. *See Downingtown*, 913 A.2d at 205.

[16] Section 518.1 was added by the Act of December 28, 1955, P.L. 917.

When necessary, as here, the trial court's order stating the assessed total market value must also include the assessed land and improvement values, particularly if only one value is contested or when a tax exemption applies. *See Miracle Mile*, 209 A.2d at 395; *Park Village*, 184 A.2d at 255. For example, in *Miracle Mile*, our Supreme Court noted that the parties' "stipulation as to the fair market value of land or improvements is merely an evidentiary expedient and does not alter the court's obligation on review to pass upon and to determine the correctness of the property assessment as a whole." *Miracle Mile*, 209 A.2d at 395. In other words, notwithstanding any stipulation, the trial court's order should include the values necessary to calculate the "total assessment of the property as a unit." *Id.* Similarly, in *Park Village*, our Supreme Court observed that the "reasonableness of the total assessment . . . is controlling," *i.e.*, the reviewing authority considers the "total assessment of both land and improvements as a unit . . . ." *Park Village*, 184 A.2d at 255.

Although the instant order omits the necessary values, we would be remiss if we did not highlight the parties' erroneous stipulation to the Properties' total assessed values and the trial court's acceptance thereof. Briefly, the Taxpayers' tax exemption is limited to the actual cost of constructing the new home. *See* Section 303 of the IDRPA, 72 P.S. § 4711-303; *accord* Phila. Code § 19-1303.4(4)(a) (same). In other words, if assessed land value + assessed improvement value = total assessed value is "$2+$4=$6," and if the actual cost of constructing the new home at issue is $4, then the tax exemption is $4. *See* 72 P.S. § 4711-303(b); Phila. Code § 19-1303.4(4)(a).

The parties, however, erred by stipulating to the total assessed value as a constant, *i.e.*, a fixed value, because any alteration to the assessed land value

10

necessarily alters the assessed improvement value to maintain the constant. *See In re Armco, Inc.*, 515 A.2d 326, 330 (Pa. Cmwlth. 1986) (noting that in "any equation, to maintain a constant result when one variable changes, another must change to counterbalance it"). By way of illustration, in our prior example, if the parties previously stipulated to a total assessed value of $6, but the trial court decreases the assessed land value from $2 to $1, then the assessed improvement value must necessarily increase from $4 to $5 in order to preserve the stipulated total assessed value of $6, *i.e.*, "$2+$4=$6" becomes "$1+$5=$6."

The flaw in that illustration is the assumption that the assessed improvement value can change. The assessed improvement value *cannot* change, absent record evidence, *because Taxpayers' tax exemption is limited to the actual cost of constructing their new homes.* *See* 72 P.S. § 4711-303; *accord* Phila. Code § 19-1303.4(4)(a) (same). Plainly, the actual cost to construct Taxpayers' homes cannot be both $4 and $5. It follows that the parties' stipulation to the total assessed value is improper when, as here, a party elects to challenge one of the component values, and therefore the stipulation is void. *Cf. Klingler v. Workmen's Comp. Appeal Bd.*, 413 A.2d 432, 435 (Pa. Cmwlth. 1980) (holding that a stipulation to waive interest was illegal and therefore void). For these reasons, similar to *Springettsbury*, we vacate the September 30, 2020 order and remand to the trial court for an order that complies with 72 P.S. § 5020-518.2(a)-(b). *See Springettsbury*, 124 A.3d at 287 n.9. Because of our disposition, we need not address the City's remaining issue.

## IV. CONCLUSION

For these reasons, we quash the appeals at dockets 1313 and 1314 C.D. 2020, vacate the trial court's September 30, 2020, and December 2, 2020 orders at

dockets July 2018-002796 and July 2018-002797, strike the parties' September 21, 2020 stipulation, and remand to have the trial court issue an order that complies with 72 P.S. § 5020-518.2(a)-(b).

LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Appeal of Linehan | : | **CASES CONSOLIDATED** |
| From a Decision of the Board of | : | No.    1167 C.D. 2020 |
| Revision of Taxes | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |
| | | |
| Appeal of Levin | : | |
| From a Decision of the Board | : | No.    1168 C.D. 2020 |
| of Revision of Taxes | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |
| | | |
| In Re: Appeal of Linehan | : | |
| From a Decision of the Board of | : | No.    1313 C.D. 2020 |
| Revision of Taxes | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |
| | | |
| In Re: Appeal of Levin | : | |
| From a Decision of the Board | : | No.    1314 C.D. 2020 |
| of Revision of Taxes | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |

## **O R D E R**

AND NOW, this 9th day of November, 2022, we quash the appeals at dockets 1313 and 1314 C.D. 2020, vacate the trial court's September 30, 2020, and December 2, 2020 orders at dockets July 2018-002796 and July 2018-002797, strike the parties' September 21, 2020 stipulation, and remand to have the trial court issue an order that complies with Section 518.2(a)-(b) of The General County Assessment Law, Act of May 22, 1933, P.L. 853, art. V, *as amended*, added by the Act of December 13, 1982, P.L. 1160, 72 P.S. § 5020-518.2(a)-(b).

Jurisdiction relinquished.

_____
LORI A. DUMAS, Judge