IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Appeal of Levin | : | **CASES CONSOLIDATED** |
| | : | No. 17 C.D. 2023 |
| From a decision of the Board of Revision of Taxes | : | |
| | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |
| | : | |
| In re: Appeal of Linehan | : | No. 18 C.D. 2023 |
| | : | Argued: March 4, 2025 |
| From a decision of the Board of Revision of Taxes | : | |
| | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                   HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  July 22, 2025

          The City of Philadelphia (City) appeals two orders of the Philadelphia County Court of Common Pleas (trial court), which sustained the tax assessment appeals filed by Timothy and Alexandra Levin (Levins) and Charles and Molly Linehan (Linehans) (collectively, Taxpayers).  Because of the City's tax abatement of the improvement made to each lot by Taxpayers, their tax burden was based upon the assessed value of the land.  Crediting the opinion of Taxpayers' expert, the trial court reduced the land assessment for each lot for tax years 2018 to 2021.  On appeal, the City argues the trial court erred in calculating the market value of Taxpayers' properties by adding the land assessment offered by Taxpayers' expert to the City's assessment of the improvement on each property.  Additionally, the City argues that

the trial court erred in accepting the methodology used by Taxpayers' expert to demonstrate a violation of the Uniformity Clause of the Pennsylvania Constitution.[1] For the reasons to follow, we vacate and remand for further findings.

## Background

In 2014, the Levins purchased a vacant lot at 415 W. Moreland Avenue for $400,000, and the Linehans purchased the adjoining vacant lot at 411 W. Moreland Avenue for $400,000. Thereafter, Taxpayers each constructed a single-family colonial style home on their respective lots. Taxpayers each received a 10-year tax exemption on the improvements to their lots, *i.e.*, their new homes.

As of 2017, each lot had an assessed land value of $215,000. In 2018, the City's Office of Property Assessment (Assessment Office) tripled the assessed land value for both lots. The Assessment Office assessed the Levins' property at $2,500,000, of which $725,000 was for the land and $1,775,000 was for the improvement. It assessed the Linehans' property at $2,414,900, of which $700,321 was for the land and $1,714,579 was for the improvement. Taxpayers appealed the 2018 assessments, and the City's Board of Revision of Taxes (Tax Board) revised the assessments. The Tax Board reduced the Levins' total assessment to $2,110,000, which included a land value of $611,900 and an exempt improvement value of $1,498,100. Notes of Testimony, 9/21/2020, at 8 (N.T. __); Reproduced Record at 48a (R.R. __). The Tax Board reduced the Linehans' total assessment to $2,090,000, which included a land value of $606,100 and an exempt improvement value of $1,483,900. *Id.*

Taxpayers appealed to the trial court. They argued that the Tax Board overstated the land value portion of their assessments, which defeated the purpose

---

[1] PA. CONST. art. VIII, §1.

of the 10-year tax abatement on their improvements. This overstatement violated the Uniformity Clause. Under the Philadelphia Code, the real estate tax on Landowners' lots is determined by application of the tax rate to the land value portion of their assessment. PHILA. CODE §§19-1301 (setting forth the tax rate to be levied on "the assessed value of taxable real property"), 19-1303.4(6)(d) (Tax Board to separately assess the dwelling unit and the land to determine the assessment valuation attributable to the cost of construction of the new dwelling unit).

On September 21, 2020, the trial court conducted a hearing. Taxpayers presented the testimony of Joseph Benincasa, a certified real estate appraiser with 48 years of experience, who was qualified as an expert. Benincasa testified that the two lots involved are each improved with a single-family colonial home and have a fair market value of over $2,000,000. Each lot is level and has access to public water, sewer, gas and electric. Each lot is 24,625 square feet in size and located in the Chestnut Hill area of the City. Benincasa opined on the land value portion of the assessment for each lot.

Benincasa explained that there are three approaches to value real property: counter-cost method; income approach; and sales comparison approach. Benincasa did not use the "counter-cost method" of valuation, which considers replacement cost of the property, less depreciation and obsolescence, and is used to assess structures. As such, it was irrelevant to his determination of "the assessments for the land." N.T. 14-15; R.R. 50a. Likewise, the "income approach"[2] was not relevant because the land did not generate income. N.T. 14-15; R.R. 50a. Benincasa used only the sales comparison approach, which compares the subject property to

_____

[2] The income approach determines fair market value by dividing the subject property's annual net rental income by an investment rate of return. *Jackson v. Board of Assessment Appeals of Cumberland County*, 950 A.2d 1081, 1084 n.1 (Pa. Cmwlth. 2008).

3

similar properties, with consideration given to size, age, physical condition, location and other factors.

Benincasa next explained that he identified five recent sales of City properties that were similar to those owned by Taxpayers. The first property, 607 St. Andrews Road, sold for $2,875,000 in January of 2017. The property consisted of a 4-year-old, 4,500-square-foot custom colonial house on a 43,565-square-foot lot. In 2018, the Assessment Office assessed the land's value at $600,000, or $13.77 per square foot. The second property, 3 Valley View Road, sold for $1,840,000 in January of 2017. The property consisted of a 9-year-old colonial house on a 28,370-square-foot lot. In 2018, the Assessment Office assessed the land at $233,100, or $8.21 per square foot. The third property, 17 Summit Street, sold for $1,875,000 in June of 2017. The property consisted of a 167-year-old, 5,030-square-foot colonial house. In 2018, the Assessment Office assessed the land at $178,440, or $10.51 per square foot. The fourth property, 8016 Seminole Street, sold in June of 2017 for $1,840,000. The property consisted of a 90-year-old, 5,070-square-foot colonial house on a 24,200 square-foot lot. In 2018, the Assessment Office assessed the land at $197,500, or $8.16 per square foot. Finally, the fifth property, 200 White Marsh Avenue, sold for $1,233,094 in October of 2017. The property consisted of an 84-year-old colonial house. In 2018, the Assessment Office assessed the land at $319,980, or $9.14 per square foot.

Benincasa testified that he made adjustments to the comparable properties to account for differences in location, lot sizes, and the availability of public utilities. He adjusted properties two and five because they were served by septic tanks, not public sewer. He adjusted properties one and five to account for the size of the lots. After these adjustments, he determined that the average land

4

value for the five comparable properties was $11.66 per square foot. N.T. 20; R.R. 51a. Benincasa fixed upon an assessment land value of $12.18 per square foot for the two lots owned by Taxpayers, which was higher than that used by the Assessment Office for four of the comparable sales. For Taxpayers, the Assessment Office set a land value at 411 W. Moreland Avenue at $24.61 per square foot, and it set a land value of $24.84 per square foot at 415 W. Moreland Avenue. Using his value of $12.18 per square foot, Benincasa opined that the assessment land value on each of the two involved lots was $300,000 for tax year 2018.

Benincasa did updated appraisals for tax years 2019 and 2020.[3] Sales data yielded assessment land values that ranged from $6.77 to $9.05 per square foot. After adjusting for lot size and utilities, he determined that for 2019 the assessed land value of Taxpayers' properties was $325,000, and $350,000 for 2020.

On cross-examination, Benincasa agreed that the property at 607 St. Andrews Road sold for $2,875,000 and that he did not apportion the sales price between the improvement, *i.e.*, the house, and the land. He calculated the land value per square foot by dividing "the assessment [value] of the [land] by the square footage of the [land]." N.T. 27; R.R. 53a. Benincasa explained that the sales price of the St. Andrews Road property did not figure into his methodology; rather, it was the basis of choosing a comparable. However, even if the St. Andrews Road property sold for $5,600,000, instead of $2,875,000, that would not affect the assessment value of the land. A comparison of the assessment value of the land could only be determined with reference to the land assessments of the Assessment Office on the five comparable properties.

---

[3] In his testimony, Benincasa referred to an appraisal report he prepared, which was submitted to the trial court. It is not clear whether this document was admitted into evidence. It is not in the reproduced record or in the original record.

The City did not present any evidence in rebuttal. Instead, it argued that Taxpayers could not bring a land-only assessment appeal. It also argued that Taxpayers' expert used a flawed methodology because he did not establish a market value for the land portion of the total assessment. The City contended that to establish a uniformity violation,

> the appraiser would have had to testify as to the fair market value of the land of those parcels, the assessed value of the land of those parcels; he would have had to develop a ratio of assessed value to market value for those parcels and then he would have had to opine, based on what the sale value of the land as unimproved would have been, and then argue that the same ratio of fair market value to the assessed value which prevails among the comparables should then be applied to the subject property.

N.T. 44; R.R. 57a.

### Trial Court's Orders

On September 22, 2020, the trial court sustained Taxpayers' appeals,[4] setting the assessment value of the land at 411 West Moreland Avenue at:

2018: $300,000

2019: $325,000

2020: $350,000

2021: $350,000

Trial Court Order, 9/22/2020, at 1. The trial court set the assessment value of the land at 415 W. Moreland Avenue as follows:

2018: $300,000

2019: $325,000

2020: $350,000

2021: $350,000

---

[4] The trial court's September 22, 2020, order was docketed on September 30, 2020.

6

Trial Court Order, 9/22/2020, at 2.  The trial court did not determine the assessment value of the improvements on either lot, and the City appealed to this Court.

The City also filed a motion for reconsideration/clarification, which the trial court granted in part.  On December 1, 2020, the trial court issued an order that set the total assessed value of each lot owned by Taxpayers, including the breakdown of the land assessment and the improvement assessment.  For 411 W. Moreland Avenue, the trial court set the following values:

| Tax Year | Total Assessed Value | Exempt Improvement | Taxable Land |
| --- | --- | --- | --- |
| 2018 | $2,110,000 | $1,810,100 | $300,000 |
| 2019 | $2,110,000 | $1,785,000 | $325,000 |
| 2020 | $2,021,800 | $1,671,800 | $350,000 |
| 2021 | $2,021,800 | $1,671,800 | $350,000 |

Trial Court Order, 12/1/2020, at 1-2.  For 415 W. Moreland Avenue, the trial court set the following values:

| Tax Year | Total Assessed Value | Exempt Improvement | Taxable Land |
| --- | --- | --- | --- |
| 2018 | $2,090,000 | $1,790,000 | $300,000 |
| 2019 | $2,090,000 | $1,765,000 | $325,000 |
| 2020 | $2,002,600 | $1,652,600 | $350,000 |
| 2021 | $2,002,600 | $1,652,600 | $350,000 |

Trial Court Order, 12/1/2020, at 2-3.

The City appealed this order.

By order dated November 9, 2022, this Court vacated the trial court's orders dated September 22, 2020, and December 1, 2020, and remanded the matter

7

for the trial court to issue new orders that included the common level ratio (CLR) for each property by tax year.[5]

On December 7, 2022, following argument,[6] the trial court issued a new order that set the assessment for 411 W. Moreland Avenue as follows:

| Tax Year | Land Assessment | Improvement Assessment (abated) | Market Value | CLR-Adjusted Market Value |
|---|---|---|---|---|
| 2018 | $300,000 | $1,483,900 | $1,783,900 | $1,801,739 |
| 2019 | $325,000 | $1,483,900 | $1,808,900 | $1,826,989 |
| 2020 | $350,000 | $1,431,859 | $1,781,859 | $1,888,771 |
| 2021 | $350,000 | $1,431,859 | $1,781,859 | $1,906,589 |

[5] The General County Assessment Law states, in relevant part, as follows:

(a) In any appeal of an assessment the court shall make the following determinations:

(1) The market value as of the date such appeal was filed before the county commissioners, acting as a board of revision of taxes, or the board for the assessment and revision of taxes. In the event subsequent years have been made a part of the appeal, the court shall determine the respective market value for each such year.

(2) The [CLR] which was applicable in the original appeal to the county commissioners, acting as a board of revision of taxes, or the board for the assessment and revision of taxes. In the event subsequent years have been made a part of the appeal, the court shall determine the respective [CLR] for each such year published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year being appealed.

(b) The court, after determining the market value of the property pursuant to subsection (a)(1), shall then apply the established predetermined ratio to such value unless the corresponding [CLR] determined pursuant to subsection (a)(2) varies by more than fifteen per centum (15%) from the established predetermined ratio, in which case the court shall apply the respective [CLR] to the corresponding market value of the property.

Section 518.2(a)-(b) of the Act of May 22, 1933, P.L. 853, *as amended*, added by the Act of December 13, 1982, P.L. 1160, 72 P.S. §5020-518.2(a)-(b).

[6] Taxpayers' counsel stated that, in the 2020 hearing, no testimony was offered on the improvement value assessment because that amount is set by the Assessment Office, which uses Taxpayers' construction costs. Hearing Transcript, 11/30/2022, at 6; R.R. 64a.

8

Trial Court Order, 12/7/2022, at 2; R.R. 72a.  The new order set the assessment for 415 W. Moreland Avenue as follows:

| Tax Year | Land Assessment | Improvement Assessment (abated) | Market Value | CLR-Adjusted Market Value |
|---|---|---|---|---|
| 2018 | $300,000 | $1,498,100 | $1,798,100 | $1,816,081 |
| 2019 | $325,000 | $1,498,100 | $1,823,100 | $1,841,331 |
| 2020 | $350,000 | $1,445,587 | $1,795,587 | $1,903,322 |
| 2021 | $350,000 | $1,445,587 | $1,795,587 | $1,921,278 |

*Id.*  The new order did not revise the market values of the land set forth in the trial court's prior orders.  The City filed the present appeal.

In an opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court acknowledged that generally assessments are based upon a property's total market value, not its constituent elements.  Trial Court 1925(a) Op., 8/25/2023, at 5.  However, this case presented a necessary exception to that rule because Taxpayers' tax burden was based solely on the land portion of their assessments, given the 10-year tax abatement granted in 2018 on the improvements.  The trial court accepted the opinion of Taxpayers' expert, which was based upon a physical examination of each lot and sales of comparable properties located in the same neighborhood.  Using his 48 years of experience, Taxpayers' expert developed a land assessment value for the Properties.  It was $300,000 in 2018; $325,000 in 2019; and $350,000 in 2020 and 2021.

9

## Issues on Appeal

On appeal,[7] the City raises three issues.[8]

1.    Did the [trial c]ourt commit an abuse of discretion or error of law when it altered the assessment without presentation of evidence by the [T]axpayers as to the total market value of the parcel in contravention of the Supreme Court's direct holdings?

2.    Did the [trial c]ourt commit an abuse of discretion or error of law when it accepted [T]axpayer[s'] argument on remand that it should develop a new assessment by using the improvement value of the old assessment in sum with its new determination of land value to arrive at a new total assessment?

3.    Did the [trial] court commit an error of law or abuse of discretion when it altered the land assessment based on a report that did not analyze actual sale prices, but instead used the impermissible method of merely comparing assessed values of nearby lots without reference to their market value?

City's Brief at 8.

## Relevant Law

We begin with a review of the law.

The Uniformity Clause of the Pennsylvania Constitution states as follows:

> All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

PA. CONST. art. VIII, §1.  The value of the Uniformity Clause has been summarized as follows:

---

[7] In tax assessment appeals, this Court determines whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Douglass Village Residents Group v. Berks County Board of Assessment Appeals*, 84 A.3d 407, 408 n.3 (Pa. Cmwlth. 2014). Our standard of review for questions of law is *de novo*, and our scope of review is plenary. *Id*.

[8] For purposes of this opinion, we have reordered the City's issues on appeal.

> While every tax is a burden, it is more cheerfully borne when the citizen feels that he is only required to bear his proportionate share of that burden measured by the value of his property to that of his neighbor. This is not an idle thought in the mind of the taxpayer, nor is it a mere speculative theory advocated by learned writers on the subject; but it is a fundamental principle written into the Constitutions and statutes of almost every state in this country.

*Delaware, L. & W. Railway Company's Tax Assessment*, 73 A. 429, 430 (Pa. 1909).

Within a taxing district, all real property "is a single class." *Valley Forge Towers Apartments N, LP v. Upper Merion Area School District*, 163 A.3d 962, 975 (Pa. 2017). For this reason, "the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner." *Id.* In *Clifton v. Allegheny County*, 969 A.2d 1197, 1212 (Pa. 2009), our Supreme Court established that real property is "the classification" and that the Uniformity Clause requires "all real estate [] be treated as a single class entitled to uniform treatment."

In a tax assessment appeal, the board of assessment appeals presents its assessment records into evidence to establish the assessment, which is presumed valid. *Songer v. Cameron County Board of Assessment Appeal*, 173 A.3d 1253, 1256 (Pa. Cmwlth. 2017). The burden then shifts to the taxpayer to present "sufficient competent, credible and relevant evidence" of the property's fair market value to overcome the assessment's presumed validity. *Id*. at 1257 (quoting *Expressway 95 Business Center, LP v. Bucks County Board of Assessment*, 921 A.2d 70, 76 (Pa. Cmwlth. 2007)) (emphasis in original omitted). If the taxpayer meets this burden, the tax assessment record loses its presumed validity. *Green v. Schuylkill County Board of Assessment Appeals*, 772 A.2d 419, 426 (Pa. 2001) (citation omitted). If

11

the board of assessment appeals presents rebuttal evidence, the trial court resolves the conflict in the evidence. *Id*.

The trial court hears a tax assessment appeal *de novo* and is the finder of fact. *Grand Prix Harrisburg, LLC v. Dauphin County Board of Assessment Appeals*, 51 A.3d 275, 280 (Pa. Cmwlth. 2012). As such, the trial court has exclusive province over all matters of credibility and evidentiary weight. This includes the discretion over which valuation method to use to value a particular property. *Id*. The trial court's factual findings will not be disturbed if they are supported by substantial evidence. *Id*.

In a city of the first class, *i.e.*, the City, real property is assessed "at a value based upon an established predetermined ratio which may not exceed one hundred percent of actual value." Section 13(b) of what is commonly referred to as the First-Class County Assessment Law, Act of June 27, 1939, P.L. 1199, *as amended*, 72 P.S. §5341.13(b).[9] In arriving at actual value, three methods must be considered:

(A) Cost (reproduction or replacement, as applicable, less depreciation and all forms of obsolescence);

(B) Comparable sales approach;

(C) Income approach.

---

[9] It states:

> (b) The board shall assess real property at a value based upon an established predetermined ratio which may not exceed one hundred percent of actual value. Such ratio shall be established and determined by the governing body after proper notice has been given.

Section 13(b) of the First Class County Assessment Law, 72 P.S. §5341.13(b).

Section 13(c) of the First Class County Assessment Law, 72 P.S. §5341.13(c).[10]  In this regard, the testimony of a qualified expert appraiser who relates his expert opinion to these factors is generally deemed competent.  *Aetna Life Insurance Company v. Montgomery County Board of Assessment Appeals*, 111 A.3d 267, 285 (Pa. Cmwlth. 2015).  However, if an appraiser uses an invalid methodology, his opinion is not competent and cannot support a valuation.  *Grand Prix Harrisburg*, 51 A.3d at 280.

With this background, we address the City's issues on appeal.

**Analysis**

In its first issue, the City argues that the trial court erred in revising the assessments of Taxpayers' properties without evidence from Taxpayers on the value of the improvements made to each property.  In *North Park Village, Inc. v. Board of Property Assessments, Appeals and Review of Allegheny County*, 184 A.2d 253, 255 (Pa. 1962), the Pennsylvania Supreme Court held:

> While it is perfectly legal for the assessor to enumerate the constituent parts of a single subject of taxation and the value placed on each, it is the reasonableness of the total assessment that is controlling.  The total assessment of both land and improvements as a unit is the factor to be considered in determining the correctness of the assessment.

---

[10] It states:

> In arriving at actual value, the price at which any property may actually have been sold, either in the base year or in the current taxable year, shall be considered but shall not be controlling. In arriving at the actual value, all three methods: namely, cost (reproduction or replacement, as applicable, less depreciation and all forms of obsolescence), comparable sales and income approaches, must be considered in conjunction with one another.

Section 13(c) of the First Class County Assessment Law, 72 P.S. §5341.13(c).

13

The Supreme Court reaffirmed *North Park Village*, in *Deitch Company v. Board of Property Assessment, Appeals and Review of Allegheny County*, 209 A.2d 397, 399 (Pa. 1965), stating:

> The trial of this case in conformity with the understanding of counsel for both parties and of the court that only the assessment on land was being attacked was improper. The parties may not, by stipulation or otherwise, circumvent our holding [i]n *North Park Village*.

The City argues that the trial court erred by combining the land assessment proffered by Taxpayers' expert with the improvement assessment made by the City to determine the total market value assessment. In effect, the trial court acted as an assessor, which is beyond the purview of the judiciary.

Taxpayers respond that because of the 10-year tax abatements of the improvements on their lots, their tax burden is determined exclusively by the assessed land value, not the total market value of the property. The amount of the exemption for the improvement is based upon the cost of construction of the improvement, not the market value of the improvement. Further, Taxpayers respond that the cases the City relies upon in making its argument that the property tax burden was determined by the total market value assessment were decided prior to the "advent of the ten-year tax abatements[.]" Taxpayers Brief at 16.

The Assessment Office assesses property "at the actual value thereof," *i.e.*, current market or base year market value. Section 13(a) of the First Class County Assessment Law, 72 P.S. §5341.13(a).[11] "Actual value means a parcel's fair

---

[11] It states:

> All property within the county now or hereafter made taxable by law, shall be valued by the assessors and assessed by the board at the actual value thereof. In

market value, which is the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Harley-Davidson Motor Company v. Springettsbury Township*, 124 A.3d 270, 279 (Pa. Cmwlth. 2015) (quotation omitted).

The City is authorized to use tax exemptions to encourage residential development. *See* Section 302 of the Improvement of Deteriorating Real Property or Areas Tax Exemption Act, Act of July 9, 1971, P.L. 206, *as amended*, added by the Act of August 5, 1977, P.L. 167, 72 P.S. §4711-302. The City decided to authorize a tax abatement for new residential construction in certain areas. PHILA. CODE §19-1303.4. The abatement covers the "cost of construction" of the new dwelling for 10 years. PHILA. CODE §19-1303.4(4)(a),[12] (5)(a). When there is a tax abatement on a property, the Assessment Office assesses "separately the dwelling unit and the land upon which the new residential construction stands." PHILA. CODE §19-1303.4(6)(d).[13]

---

> arriving at actual value the county may utilize the current market value or it may adopt a base year market value.

Section 13(a) of the First Class County Assessment Law, 72 P.S. §5341.13(a).

[12] It states, in part: "The exemption from real estate taxes shall be limited to that portion of the assessment valuation attributable to the cost of construction of the new eligible dwelling unit." PHILA. CODE §19-1303.4(4)(a).

[13] It states:

> Upon completion of the construction, the applicant shall notify the Board of Revision of Taxes, so that the Board may assess the construction for the purpose of calculating the amount of assessment eligible for exemption. In order to determine the assessment valuation attributable to the cost of construction of the new eligible dwelling unit, the Board of Revision of Taxes shall assess separately the dwelling unit and the land upon which the new residential construction stands.

PHILA. CODE §19-1303.4(6)(d).

The Philadelphia Code directs that the land and improvements thereon must be separately assessed when construction costs are abated. PHILA. CODE §19-1303.4(6)(d). Nevertheless, a total assessed value must be established. *See generally* PHILA. CODE §19-1303.4. The assessment includes "the entire property and not merely its constituent elements." *Erie-Western Pennsylvania Port Authority v. Erie County Board of Assessment Appeals*, 213 A.3d 1041, 1049 (Pa. Cmwlth. 2019) (quotation omitted). Further, it is the total assessment that is appealed, even where the taxpayer challenges only the land component of the total assessment. *See North Park Village*, 184 A.2d at 255 ("The total assessment of both land and improvements as a unit is the factor to be considered in determining the correctness of the assessment.").

To overcome the taxing authority's *prima facie* case, Taxpayers had to present evidence of the fair market value of the property, both the land and the improvements thereon. *Erie-Western Pennsylvania Port Authority*, 213 A.3d at 1049. Taxpayers did not present evidence on the value of the improvements because it was irrelevant to their actual tax burden.

The trial court accepted the land value assessment proffered by Taxpayers' expert, as it may do as trier of fact. The trial court then added that land assessment to the City's improvement assessment to arrive at each property's total market value. This was error. Because the trial court is neither an assessor nor an appraiser, *Green*, 772 A.2d at 426, it must make its determination upon the evidence put before it. *Id*.

## Conclusion

For this reason, we vacate the trial court's order and remand for findings of fact and a new order on the total market value of Taxpayers' properties. Should

16

the trial court determine that it needs more evidence, it may hold a new hearing. *Green*, 772 A.2d at 432 n.10 (trial court can order a new hearing if, on remand, it considers the available evidence to be inadequate).[14]

 

_____

      MARY HANNAH LEAVITT, President Judge Emerita

Judge Dumas did not participate in the decision in this case.

---

[14] Because the trial court's decision is vacated, we need not address the City's other arguments.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Appeal of Levin | : | **CASES CONSOLIDATED** |
| | : | No. 17 C.D. 2023 |
| From a decision of the Board of Revision of Taxes | : | |
| | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |
| | : | |
| In re: Appeal of Linehan | : | No. 18 C.D. 2023 |
| | : | |
| From a decision of the Board of Revision of Taxes | : | |
| | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |

# O R D E R

AND NOW, this 22nd day of July, 2025, the orders of the Court of Common Pleas of Philadelphia County, dated December 7, 2022, are VACATED and the matters remanded for further proceedings consistent with this opinion, including findings of fact and a new order.

Jurisdiction relinquished.

---

MARY HANNAH LEAVITT, President Judge Emerita